

UNITED STATES DISTRICT COURT

FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| Donald G. Jackman, Jr. and Various Firearms and other Property owned by Donald G.Jackman, Jr. ) ) ) ) ) vs. ) ) United States of America ) | 00-72 CR Case No. 00-757 |

FILED

MAR 2 4 2006

CLERK U.S. DISTRICT COURT
W. DIST. OF PENNSYLV.

## MEMORANDUM OF LAW IN SUPPORT OF
## MOTION FOR THE RETURN OF PROPERTY UNDER
## RULE 41(G)

COMES NOW, Donald G.Jackman, Jr. (Mr.Jackman) in the above Titled
and Captioned case showing the following in support of the Motion For
The Return of Property under Rule 41(g) (2005 Edition F.R.Crim.P.).
The supporting facts and case law are as follows:

1.    The importance of the foregoing laws and facts are to establish
a legal standing and claim of right by Mr. Jackman to the firearms and
other unspecified on the warrant or related to criminal activity property
taken. Even if the government would claim that Mr.Jackman could not own
or possess the firearms, this would fail i.e. it would be an invalid
claim on the part of the government for several reasons. They are as
follows: (1) The pennsylvania Constitution Article I Section 21 is be-
ing violated by being "questioned".(2) Mr.Jackman's rights of citizenship
were restored with firearm purchases being made for atleast four years
without any denials (proof of a valid restoration), (3) Pennsylvania
Statutes Pa.§6104(a)(2)allow firearms owned by a person under disability
to transfer the firearms to a friend or family member who is not under
disability/sanction. (4) That even though claimed a valid disability/san-
ction has never been imposed upon Mr.Jackman or could be lawfully imposed
upon Mr.Jackman or could pass the seven part test of <u>Kennedy v. Mendoza-
Martinez</u>, 371 U.S. 144 (1963), (5) That Double Jeopardy is truely evident
in the present case due to proof beyond a reasonable doubt "lacking".

(1)

(plea not voluntary due to no other viable alternative since AUSA tainted jury with rebuttal statements of unsubstantiated acts by Mr.Jackamn) see United States v. Ward, 448 U.S. 242 and referenced cases, (6) That punishment (penal) has been inflicted bassed on a claimed "loss" of rights of citizenship which are outside the authority of government and congress to impose according to U.S. Supreme Court holdings in Afroyim v. Rusk, 387 U.S. 253 (1967) and Vance v. Terrazas, 444 U.S. 252 (1980), with further support found in United States v. Lopez, 514 U.S. 549 (1995) holding that commerce clause does not grant wide sweeping police powers to the federal government.

The foregoing being relevant and applicable to this case now before in establishing a valid claim of right by Mr.Jackman to the property taken while further showing governments violations of the protections against double jeopardy. That fraud on the part of the government will be established beginning with the application of an improper statute for authority to forfeit starting at (1) as follows:

1.     That the governments documentation filed, used for forfeiture, would to anyone looking into files appear as just another firearms forfeiture under a related drug forfeiture statute. The Fourth Amendment requires all searches to be reasonable and probable cause must exist. Here in lyes the first fault of the governments claim for forfeiture under 21 USCS § 881. There were no drugs, drug activity, proceeds from any drug activity, nor statements made that inferred any drug activity by Mr.Jackman at 150 Caldwell Drive or any other location. The predicate offense cited by the government failed to include the restoration of rights or all the bad faith acts by the superior court judge down to the street informants that resulted in an unjust trial and sentence when it was exposed their actions were not justifiable, but were done inorder to deprive citizens of property and liberty for nothing more than their personal gain.

This activity went on from 1986 to 1990 by agents and actors of the County of Catawba North Carolina. The foregoing instances being a major contributing factor to Mr.Jackman's release after only two years on a 17 year sentence. The point being that any of this activity used as a basis for forfeiture was done so after the 5 year limitation

of actions had expired, see 19 USCS § 1620 & 28 USCS 2401 for limita-
tions on 881 forfeiture claims. Id at 924 F.2d 383,389 (1st Cir.1991).
[See Exhibit A for forfeiture form].

Fraud on the part of the government can clearly be demonstated
by the fact the forfeiture was based on an unapplicable §881 and the
"taking" of so many items That had no bearing on any criminal acts.
They were just "cool" items wanted by agents in violation of the Fifth
Amendments "takings clause". The question must be asked, what does
a traffic citation on appeal have anything to do with or relevance
to a drug forfeiture or firearms violations as a means to initially
arrest Mr.Jackman unless there was no probable cause to arrest Mr.Jackman
and this was used as a means to justify Bad Faith Acts by the government
to acquire probable cause or create it when it clearly did not exist.

Other support of the fraud can be found in the fact that the
firearm purchase records showing four years of approved purchases are
still being withheld by the U.S. Attorney's Office in Pa. Without
a valid search warrant, arrest (traffic stop), or forfeiture all evidence
should have been barred. See Weeks v. U.S., 232 U.S. 383,389 (1914)
(baring use in federal courts of evidence seized by federal officers
in violation of the 4th Amendment). The prejudice suffered by these
acts was the denial of "viable" counsel due to not having access to
the collateral value of the property. Without the viable counsel these
issues were never brought before the court at the appropriate times
or in the appropriate manner. The outcome we need go no further.

2.    Probable cause standard required, Fifth Amendment violation of
due process; due process clause of Federal Constitution Fifth Amendment
prohibits Federal Government from seizing real property pursuant to
21 USCS § 881 without affording owner prior notice and opportunity
to be heard. See United States v. Danial Good Real property,(1993 US)
127 L.Ed 2d.490. The government also has failed to show the property
taken from Mr.Jackman had violated any laws. The case is about firearms
that were not used in or committed on their own any crime. This volates
the "Tucker Act" protections against violations of due process. See
Lowther v. United States, (1973 CA10 Okla) 480 F2d. 1031.

That no opportunity was "ever" afforded Mr.Jackman to be heard
at "any" time during the un-forfeiture proceedings which consisted

of sending Mr.Jackman a copy of the governments motion to forfeit followed
2 days later by the granting of said forfeiture motion by the district
court. (Un-forfeiture was used to describe a lack of any proceeding
with Mr.Jackman present) That Mr Jackman's filed objections which included
demand for jury trial all promptly sent after notice falling on deft ears.
The granted forfeiture positive proof that the forfeiture constituted
a second punishment while being a fraud when initiated under Title
21 USCS § 881. See <u>United States v. Austin</u>, 125 L.Ed.2d 488 (1993)
determining that civil forfeiture under 21§881 was punishment.

   Here in lies a showing on the part of the government that documen-
tation used for forfeiting property was inapplicable constituting a
fraud upon the court. With prior similar acts being the tainting of
the jury, withholding of exculpatory evidence, and the altering of
transcripts to create a record that supports the government's case
when otherwise the facts don't support their allegations. The tainted
jury and refusal to impanel another jury forced by circumstance, Mr.
Jackman to either choose a trial by people who think he had killed
others, or take a plea of guilty. That prosecution commenced even when
the prosecution had evidence that the alleged destructive devices were
in fact determined by the Secretary of the ATF to not be destructive
and thus not requiring registration. The same with the approved purchase
records and restoration of rights documentation which conclusively
show Mr.Jackman was not knowingly violating any state or federal laws.

   This a clear showing that the government has repeatedly shown
a total disrespect and disregard of the laws and procedures they have
a duty to uphold. These foregoing acts all done with what appeared
to be the blessings of the court or the courts assistance. There can
be no disputing the foregoing has resulted in a violation of double
jeopardy by what can only be described as criminal acts on the part
of the government actors. Another sure to be argued issue by the govern-
ment will be that Mr. Jackman took a plea and has no standing to contest
the forfeiture.This could be true and not true based on the fact that
trial and plea both exist on the same instance giving both right to
challenge and waiver. The waiver being negated by the trial and the
plea not being voluntary. The amount of property taken having NO rel-
evance to criminal activity a conclusive showing of governments ill

intent in all aspects of the proceedings including what the search warrant originally allowed to be taken.

3.     That the property taken represents punishment as well as theft. Two Supreme Court cases -- <u>Exparte Lang</u>, 18 Wall. 163, 85 U.S. 872 (1874) and <u>In re Bradley</u>, 318 U.S. 5 (1943) stand for the general principle that a person who has been sentenced to unconstitutional multiple punishment and has "satisfied" one of the punishments, may not be punished in the second. Mr.Jackman being in prison "satisfies" this requirement.

The items listed in #3 of the motion to return property includes many items not listed on the inventory such as scopes (not attached to a firearm) commodity gold pieces, night vision, knives, money and other unknown items which constitute the theft portion by agents of the the government. The government will contend that Mr.Jackman was a felon in possession. What bearing has this concerning the stealing of his property? When was possession ever established? Ownership was established possession only presumed. Citizenship was restored, when was this taken into consideration at any time during the proceedings? Proof of this was withheld as was the required incidents.

The more important factor being when was a federal sanction ever imposed against Mr.Jackman? Where were all the incidents required to impose the sanction/disability? Even if the sanctions were imposed under 18 USCS § 922(g) they could not be upheld by this court due to failing the (7) part test of Kennedy. This would hold true for any forfeiture claims under titles 21 or 26. Realizing firearm ownership and property ownership (real or personal) are Constitutionally protected "Rights", there is issue with the Kennedy ruling and the present forfeiture proceedings. For clarity reasons the noted statutes will be applied to Kennedy from prong 1-7 as follows:

### KENNEDY REQUIREMENT

I.     Whether the sanction imposed involves an affirmative disability or restraint? There is no question the forfeiture based on sanctions imposed except not actually imposed (presumed imposed) by the statutes imposes a disability or restraint. They take Constitutionally protected property (the physical portion of the 2nd Amendment Right) and ciminalize

it in order to claim a right to it. Using a sanction that was never
imposed in a manner prescribed by law. The taking of property is the
disability with not returning it the restraint. there exists after
the fact remedies to remove the sanction[s] imposed,except a lacking
of imposed sanctions as claimed by the government. This is why the
sanction imposed is unconstitutional and establishes prong #1.

II.    Whether it has historically been reguarded as punishment? Histor-
ically the taking of one's property represents a crime. To take it
without just compensation further makes it violative of the Constitutions
of both the United States and Pennsylvania. Historically stealing has
been met with every thing from cutting off the hand that took the item
to hanging. In the case at hand the property was just not stolen it
was done so using the Federal Courts in the form of fraud which is
a criminal act also punishable with a prison sentence. An act blatently
done knowing full well that Mr.Jackman had legally acquired the firearms
and not violated any ATF Regulations. [Exhibit D]

      It is based on the foregoing in part that the statutes cannot
be held as Constitutional and the forfeiture cannot be held as allow-
able. Prong two has been established and could have further been for
pages.

III.    Whether it comes into play only on a finding of scienter? (guilty
act) The guns have committed no crime and to consider Mr.Jackman's
exercising of a protected right as a crime would render the whole of
the constitution and laws as "moot". Through years of media propaganda
people have been falsely lead to believe that the second amendment
is not an individual right. This could not be true for the fact it
would then render all other rights as collective and we know this can
not be true. There have been statutes enacted to restore rights taken
by government actions then after the fact remedies to correct. Without
government having authority to take a right there is no guilty act.
Being based on a sanction incidents are required establishing prong
three while showing the statutes are in fact unconstitutional. Based
on this showing the court cannot uphold these statutes per the Kennedy
standard.

IV.   Whether its operation will promote the traditional aims of pun-
ishment-retrobution and deterrence? These statutes in question have
accomplished nothing more than to punish for hard work and the exercising
of protected rights. There has been retrobution on the part of the
government in an untraditional manner and deterrence to believe that
incidences would be afforded and compensation rendered for the losses.
There is not a question the statutes impose punishment, are based on
retrobution, and deter a belief in the system. Prong 4 clearly estab-
lishes punishment is involved for nothing more than exercising Consti-
tutionally protected activity. I need go no further.

V.   Whether the activity to which it applies is already a crime?
This is a resounding "NO". Unless some prior act was committed and
a valid sanction imposed the behavior is not a crime, it is a protected
activity. This section clearly establishes that firearm ownership is
protected activity. Sanctions imposed against such activity are inherently
Unconstitutional. The sanctions imposed by the statutes invariably
make Constitutional activity a crime. The question whether it is al-
ready a crime is no, making this activity criminal is without question
unconstitutional i.e. a constitutional amendment would be necessary
to omit an Amendment. Prong 5 clearly established.

VI.   Whether an alternative purpose to which it may be rationally
connected is assignable for it? The statutes circumvent the Consti-
tution, take liberty, take property, and are nothing more than a means
to side step the Constitution and the protections it affords. It imposes
sanctions/disabilities and has no rational purpose that can be assigned
to them other than to usurpt power, take property, deny compensation,
and is not rational in its conception or application. They deny due
process of law and any commerce claim here is nonexistent. There is
not a rational purpose for which it is assigned. It is then according
to Kennedy's prong 6 unconstitutional and cannot be upheld by this
court.

VII.   Whether it appears excessive in relation to the alternative pur-
pose assigned. It has clearly been shown that in the previous prongs

just how excessive the "taking" allowed by said statutes actually is.
It allows as in the present case a taking based on wants and needs
of agents without legal justification or a crime actually committed
and proven beyond a reasonable doubt. There is no victim in the present
case other than Mr.Jackman who has been harmed and victimized by the
acts of government by stealing the property that was authorized to
be purchased by the government. In the instant case it has been nothing
more than theft by deception using previously stated inapplicable forfeiture
statutes that are further barred by the limitation of actions under
Titles 19§1620 and 28§2401. The excessiveness further compounded by
being a second punishment, based on the same facts and initial charges.
See Tucker Act, 28 USC § 1346(a)(2) and the holding in United States
v. United States Coin & Currency, 401 U.S. 715 (1971).

There is also the issue of the same elements which comprise the
"same offense" for the purposes of the multiple punishment analysis.
See Harris V. Oklahoma, 433 U.S. 682 (1977); For purposes of the double
jeopardy bar against multiple punishments, the two offenses must meet
the "same-elements" test. United States v. Dixon, 509 U.S. 688 (1993)
citing Blockburger v. United States, 284 U.S. 299 (1932). The foregoing
applicable in the present case.

Two other cases which would have bearing-particularly important
bearing-on the double jeopardy aspect of this case would be United
States v. Halper,490 U.S. 435 (1989) and United States v. Austin, 509
U.S. 602 (1993) concerning forfeitures under 21§881 in deciding the
excessive fines clause applies to forfeiture. The foregoing establishing
excessive as well a claim to the "taken" property that was purchased
with government approval.

**4.**    That years of approved purchases and the Assistant U.S. Attorney
having this information and suppressing it rather than bringing it
forward is violative of the long standing holding in Berger v. United
States, 295 U.S. 78, 88 (1935) "Prosecutors duty that justice shall
be done". What justice has been done? Prosecution for exercising a
Constitutional Right is not justice being done. The point of being
given permission by government for particular conduct (firearm pur-

chases) then prosecuting and forfeiting assets is in violation of long standing Supreme Court precedent found in <u>Cox v. Lousiana</u>, 379 U.S. 599 (1965) "Cox testified that they gave him permission to conduct the demonstration *on the far side of the street. This testimony is not only uncontradicted but is corroborated by the State's witnesses who were present". Id at *[379 US 569-70]. The present case has purchases being approved, purchase records being withheld by the prosecution, and nothing on the record to contradict any of the foregoing facts. Nothing has been presented by the government to show otherwise.

**5,6,&7.**  The issues brought forth in these sections cannot be fully addressed without hearing or trial. Hearing (evdentiary) is requested and if property not returned after hearing or if hearing is not granted civil jury trial is requested. That in light of no action being taken on this return of property. Thank you.

Respectfully submitted,

Donald G. Jackman, Jr.

## CERTIFICATE OF SERVICE

This is to certify that the foregoing is true and correct to the best of my ability and knowledge under penalty of perjury. That same was sent postage prepaid to all parties of record on this the 21st day of March, 2006 by giving same to Mckean Staff for delivery to U.S. Postal Service addressed as follows:

Respectfully submitted,

Donald G. Jackman, Jr. #06804068
Federal Correctional Institution,
Mckean
P.O. Box 8000
Bradford, Pa.  16701

cc: Clerk's Office
    United States District Court
    Western District of Pennsylvania
    U.S. Post Office and Courthouse
    P.O. Box 1805
    Pittsburgh, Pa,  15219

  : Kelly R. Labby, Esq.
    Assistant U.S. Attorney
    400 United States Courthouse
    Pittsburgh, Pa.  15219

  : file

| Seizure Form | Asset #: R00-FBI-00299 | Date/Time: 05/11/00 11:14:04 | Page 1 of 6 |
|---|---|---|---|

**CASE**

| (1) Office ID: 3650 | (2) Sub-Office/Group: | (3) Program Code: 07 | (4) GDEP: | (5) Szr Event/Exhibit #: 365000R016 | (6) Delay Forfeiture? N |
|---|---|---|---|---|---|

| (7) Case Number: 266A-PG-66703 | (8) Case Name: DONALD JACKMAN |
|---|---|

| (9) Operation Name: | (10) Case Agent: | b7C |
|---|---|---|

**SEIZURE**

| (11) Seizure Date: 03/14/00 | (12) FIRE Begin Date: | (13) FIRE End Date: | (14) FIRE Type: | (15) Seizure Method: Referral | (16) Indictment Date: | (17) Adoption Date: |
|---|---|---|---|---|---|---|

| (18) Seizing Agent: Johhnie Sharp Jr. | (19) Phone Number: 412-456-9172 |
|---|---|

| (20) Seized From: Donald Jackman |
|---|

| (21) Place/Address Where Seized: 150 Caldwell Dr. | (22) City: Butler |
|---|---|
| | (23) State: PA |

| (24) Seizure PAW | Judicial District (25) Processing: PAW | (26) Forfeiture Statute: 21 USC 881 | (27) Violation Statute: 21 USC 881 |
|---|---|---|---|

**ALL ASSET TYPES**

| (28) Asset Value at Seizure ($): 5000.00 | (29) Abve Min Thrshld? N | (30) Appraisal Date: | (31) Asset Type: Weapons | (32) Asset Sub-Type: 99 | (33) Forfeiture Type: Not Applicable |
|---|---|---|---|---|---|

| (34) Asset Description: 21 Various Weapons |
|---|

| (35) Lien Exists? U | (36) Hold as Evidence after Forfeiture? Y | (37) Expedited Release Notice Served? N | (38) Special Handling Code(s)? |
|---|---|---|---|

| (39) Expenses Incurred? N | (40) Forfeiture-Dependent Award? N | (41) Quick Release Performed? N | (42) Intra-Agency Assistance? N |
|---|---|---|---|

| (43) Suitable for Official Use? N | (44) OCDETF Case? N | (45) Sharing Anticipated? N | (46) Additional Agencies? N |
|---|---|---|---|

**VEHICLE (Complete if Applicable)**

| (47) Make: | (48) Model: | (49) Style: | (50) Year Manufactured: | (51) Color/Finish: |
|---|---|---|---|---|

| (52) VIN/Serial Number/Fiscal Control #: | (53) Condition Code: | (54) NCIC Search Results Positive? |
|---|---|---|

| (55) License Number: | (56) Year: | (57) State: | (58) Country: | (59) Concealed Compartment? N | (60) Photos? N |
|---|---|---|---|---|---|

| (61) Special Equipment or Accessories? N | (62) Damages Present? N | (63) Caliber? |
|---|---|---|

| (64) Odometer Reading (include units): | (65) Size: | (66) Weight (including units): |
|---|---|---|

| (67) Number of Cylinders: | (68) Four Wheel Drive? | (69) Salvage Certificate? |
|---|---|---|

**VESSEL**

| (70) Vessel Name/Coast Guard No.: | (71) Hull Type: | (72) Length: | (73) Engine Size (including units): |
|---|---|---|---|

| (74) Trailer Included? | (75) License Number: | (76) Year: | (77) State: | (78) Country: | (79) # of Engines: | (80) Mounting Type: |
|---|---|---|---|---|---|---|

**AIRCRAFT**

| (81) Tail Number: | ENGINES | (82) # | (83) Serial Number | (84) Size | (85) Flying Hours |
|---|---|---|---|---|---|
| (86) Airframe Flying Hours: | (87) # of Engines: | | | | |
| (88) Air Worthiness Certificate? | (89) Log Books? | | | | |

**FINANCIAL INSTRUMENTS**

| (90) Account Name: | (91) Account Number: |
|---|---|

**FOREIGN CURRENCY**

| (92) Nationality: | (93) Date Converted: | (94) Exchange Rate: |
|---|---|---|

*Exhibit A*

AO 93 (Rev. 5/85) Search Warrant

# United States District Court

_____ WESTERN _____ DISTRICT OF _____ PENNSYLVANIA _____

In the Matter of the Search of

(Name, address or brief description of person or property to be searched)

150 CALDWELL DRIVE, BUTLER,
PENNSYLVANIA 16002, A WHITE
STRUCTURE WITH BLACK SHUTTERS AND A
LONG GRAVEL DRIVEWAY LEADING TO THE
RESIDENCE, INCLUDING A LARGE WHITE
OUTBUILDING ON THE NORTHEAST CORNER
OF THE PROPERTY

## SEARCH WARRANT

CASE NUMBER: _CC-62-M_

**[UNDER SEAL]**

TO: __John Sharp, S/A, FBI_____   and any Authorized Officer of the United States

Affidavit(s) having been made before me by ___John Sharp, S/A, FBI_____ who has reason to

Affiant

believe that ☐ on the person of or ☒ on the premises known as (name, description and/or location)

150 Caldwell Drive, Butler, Pennsylvania 16002, further described as a white structure with black shutters and
a long gravel driveway leading to the residence, including a large white outbuilding on the northeast corner of
the property.

in the _____ Western _____ District of _____ Pennsylvania _____ there is now concealed

a certain person or property, namely (describe the person or property)

Any and all firearms and ammunition; correspondence, papers and documents which reveal that Donald G.
Jackman resides at 150 Caldwell Drive, Butler, Pennsylvania 16002; and correspondence, papers and documents
which relate to the ownership and possession of firearms by Donald G. Jackman, all of which is evidence of
violations of 18 U.S.C. § 922(g)(1), possession of a firearm by a convicted felon.

I am satisfied that the affidavit(s) and any record testimony establish probable cause to believe that the person
or property so described is now concealed on the person or premises above-described and establish grounds for
the issuance of this warrant.

YOU ARE HEREBY COMMANDED to search on or before _MARCH 17, 2000_

Date

(not to exceed 10 days) the person or place named above for the person or property specified, serving this warrant
and making the search (in the daytime — 6:00 A.M. to 10:00 P.M.) (at any time in the day or night as I find
reasonable cause has been established) and if the person or property be found there to seize same, leaving a copy of
this warrant and receipt for the person or property taken, and prepare a written inventory of the person or property
seized and promptly return this warrant to _a United States Magistrate Judge_____ as required by
law.

U.S. Judge or Magistrate

_MARCH 10, 2000   2:50 P.M._   at   Pittsburgh, PA

Date and Time Issued                              City and State

__FRANCIS X. CAIAZZA, U.S. Magistrate Judge__

Name and Title of Judicial Officer          Signature of Judicial Officer

_Exhibit B_

FD-597 (Rev 8-11-94)

Page __1__ of __3__

## UNITED STATES DEPARTMENT OF JUSTICE
## FEDERAL BUREAU OF INVESTIGATION
### Receipt for Property Received/Returned/Released/Seized

File # 266A PG-66703

On (date) 03/14/00

item(s) listed below were:
- ☐ Received From
- ☐ Returned To
- ☐ Released To
- ☒ Seized

(Name) _____

(Street Address) 150 CAlwell DR.

(City) Butler PA

Description of Item(s):

1. Books (Seven)
2. Rifle
3. 44 cal. handgun
4. holster belt + misc rounds/ammo
5. handgun
6. Misc. Mags + Ammo.
7. 11 Mags + Ammo
8. (2) Cricket IED's
9. Numerous fuses
10. 44 cal. Revolver
11. 12 Gauge Ammo
12. 12 Gauge shotgun
13. Cricket IED + (2) $CO_2$ Canisters
14. Misc. Ammo.
15. 7.62 Ammo.
16. Various Magazines
17. (3) Boxes of Matches
18. Crossbow Pistol Bolts
19. Firearm Parts 870 & 16 Gauge

Received By: _____ (Signature)    Received From: _____ (Signature)

EXHIBIT
A

Exhibit B

FD-597 (Rev 8-11-94)

UNITED STATES DEPARTMENT OF JUSTICE
FEDERAL BUREAU OF INVESTIGATION
Receipt for Property Received/Returned/Released/Seized

File # 266A-PG-66703

On (date) 03/14/00

item(s) listed below were:
☐ Received From
☐ Returned To
☐ Released To
☑ Seized

(Name) _____
(Street Address) 150 Cadwell Dr.
(City) Butler PA

Description of Item(s):

(20) (2) Crossbows
(21) Ammo Drum
(22) "UPS" Shipping Sticker
(23) 44 cal. Blk Powder
(24) Blk Canvass bag w/ Misc items  possibly night vision
(25) Powerlets + literature
(26) Misc. literature & receipts
(27) Gun Receipts + Residency Paper
(28) Blk Canvass Bag w/Ammo + Gas filter mask
(29) (3) Pellet Guns  (1) Pellet Rifle
(30) Mini 14 Ruger + (3) Mags
(31) Roller Bearings
(32) "Pyrodex" muzzel load propellant
(33) Suspected Explosive device
(34) (2) lengths of 3" fuse
(35) Gun Stock + springs
(36) AK-47 + AR-15 Conversion Kit
(37) 45 cal. handgun - Norinco
(38) Tech 9-9mm.    Intratec model AB-10

Received By: _____ Received From: _____
(Signature)                          (Signature)

Exhibit 8

FD-597 (Rev 8-11-94)

# UNITED STATES DEPARTMENT OF JUSTICE
## FEDERAL BUREAU OF INVESTIGATION
### Receipt for Property Received/Returned/Released/Seized

File # 266A-PG-66703

On (date) 03/14/00

item(s) listed below were:
- ☐ Received From
- ☐ Returned To
- ☐ Released To
- ☒ Seized

(Name) _____

(Street Address) 150 Cadwell Dr.

(City) Butler PA

Description of Item(s):

| | |
|---|---|
| 39 | MARLIN 30-30 MODEL 336A |
| 40 | 7-62 CAL SKS |
| 41 | .22 CAL RUGGER |
| 42 | 12 GAUGE WINCHESTER MODEL 1300 |
| 43 | JUKAR BLK Powder |
| 44 | 16 GAUGE STEEL Winchester model 37 |
| 45 | 12 GAUGE Remmington model 11 |
| 46 | 16 GAUGE Remmington 870 |
| 47 | 223 CAL. RUGGER RANCH |
| 48 | 223 CAL. COLT |
| 49 | 45 CAL. MARLIN MODEL 45 |
| 50 | 22 CAL. SEARS M 2000 |
| 51 | 30-06 WINCHESTER M-70 |
| 52 | B-WEST 9MM W/ MAGAZINES + PLASTIC CASE |

Received By: _____
(Signature)

Received From: _____
(Signature)

Exhibit 8

| Manufacturer | Model | Serial Number | Caliber |
|---|---|---|---|
| 1. Ruger | Mini-14 | 185-35858 | .223 |
| 2. Keltec | Sub 9 Machine Pistol | 01707 | 9 mm |
| 3. Remington | 870 | 1289889W | 12 gauge |
| 4. Norinco | NHM90 (AK-47) | M006306 | 5.56 |
| 5. Winchester | 1300 | L2769464 | 12 gauge |
| 6. Marlin | 336 | R28780 | 30-30 |
| 7. Winchester | 70 | G1937628 | 30-06 |
| 8. Remington | 1100 | N9900254 | 12 gauge |
| 9. Marlin | 45 | 04609223 | .45 Auto (rifle) |
| 10. Ruger | Mini-14 | 19549439 | .223 |
| 11. Sears | .22 Caliber Rifle | D767894 | .22 |
| 12. Colt | AR-15 | CCH015780 | .223 |
| 13. Winchester | 37 | ? | 16 gauge |
| 14. Remington | 870 | 1050266V | 12 gauge |
| 15. Ruger | ? | 50208930 | .44 revolver |
| 16. Beretta | 21 | DAA075662 | .22 |
| 17. Intratec | 9 mm MAB10 | A032644 | 9 mm |
| 18. Norinco | M1911A1 | 510797 | .45 |
| 19. Ruger | Blackhawk | 8430290 | .44 magnum |
| 20. B-West | ? | P03334 | 9 mm |
| 21. Ruger | 10-22 | 25038906 | .22 |
| 22. Iver Johnson | ? | None | 16 gauge |

*Exhibit B*

FD-597 (Rev 8-11-94)

## UNITED STATES DEPARTMENT OF JUSTICE
## FEDERAL BUREAU OF INVESTIGATION
Receipt for Property Received/Returned/Released/Seized

File # 266A-PG-66703

On (date) 3/11/2000

item(s) listed below were:
- ☑ Received From
- ☐ Returned To
- ☐ Released To
- ☐ Seized

(Name) CAROLE A. McMILLEN

(Street Address) 150 CALDWELL DRIVE

(City) BUTLER, PA

Description of Item(s): One Plastic decontamination kit
One Gas mask with Case (in canvas container)
"   "   "   " Plastic case
One Anti fogging kit for gas mask
One Tactical Vest
One Kevlar Helmet
One Flak Vest (German writing on label)
ONE Light weight body Armor (German writing on label)
One First Aid kit
One Sleeping Bag
One Green Harness / Belt with Canteen
One Green Back Pack with Tent + Stakes
One Green Bag with 6 pieces of Camo Clothing
Two PAIR of Boots

Received By: _____ (Signature)      Received From: _____ (Signature)

Exhibit B

FD-597 (Rev 8-11-94)

Page __2__ of __2__

### UNITED STATES DEPARTMENT OF JUSTICE
### FEDERAL BUREAU OF INVESTIGATION
Receipt for Property Received/Returned/(Released)/Seized

File # __26A - P6 - 66703__

On (date) __3/14/2000__

VALUABLES NOT TAKEN

item(s) listed below were:
- ☐ Received From
- ☐ Returned To
- ☒ Released To
- ☐ Seized

(Name) __Donald Jackman__

(Street Address) __150 Caldwell__

(City) _____

Description of Item(s): __5 x #1 gold coins__
__$950.00 worth of savings bonds__
__2 x 16 ounce jars pennies__

Received By: _____ (Signature)

Received From: _____ (Signature)

b7C

Exhibit B

FD-597 (Rev 8-11-94)



Page __1__ of __2__

## UNITED STATES DEPARTMENT OF JUSTICE
## FEDERAL BUREAU OF INVESTIGATION
### Receipt for Property Received/Returned/(Released)/Seized

File # 266A - PG - 66703

On (date) 3/14/2000

item(s) listed below were:
- ☐ Received From
- ☐ Returned To
- ☒ Released To
- ☐ Seized

VALUABLES NOT TAKEN

(Name) Donald Jackman
(Street Address) 150 Caldwell Dr.
(City) Butler, PA

Description of Item(s):

| | | |
|---|---|---|
| 5 | x | penny collection books |
| 1 | x | bag loose change nickels & dimes |
| 1 | x | bag half dollars & Susan B. Anthony dollars |
| 1 | x | bag of 9 (nine) gold coins |
| 1 | x | plastic jar with #55 in bills & additional loose change |
| 1 | x | plastic jar loose pennies |
| 1 | x | Mars National Bank money bag with: |

3 silver bars
1 bag loose pennies
1 bag 15 gold color dollars (coin)
4 small bags misc. collector coins
3 loose collector coins
1 pouch small gold "chips"
1 pouch w/ 5 silver coins in indiv. boxes

77 x $10 rolls of quarters
29 x $5 rolls of dimes
17 x $2 rolls of nickels
9 x .50¢ rolls of pennies

Received _____          Received From _____          b7C
              (Signature)                              (Signature)

Exhibit 8

03/20/00                                                          ICMIPR01
07:03:42                            FD-192                        Page   1

Title and Character of Case:

JACKMAN, DONALD, G
-

Date Property Acquired:   Source from which Property Acquired:
                                                                 b7C
    03/16/2000                                                   b7D

Anticipated Disposition:  Acquired By:              Case Agent:
                                                                 b7C

Description of Property:                            Date Entered
  1B 1

  1-PLASTIC DECONTAMINATION KIT;1-GAS MASK W/CASE (IN CANVAS
  CONTAINER);1 GAS MASK W/PLASTIC CASE;1-ANTI FOGGING KIT FOR
  GAS MASK;1-TACTICAL VEST;1-KEVLAR HELMET;1-FLAX VEST (GERMAN
  WRITING JON LABEL);1-LIGHT WEIGHT BODY ARMOR;1-FIRST AID
  KIT;SLEEPING BAG;GREEN HARNESS/BELT W/CANTEEN;GREEN BACK
  PACK W/TENT & STAKES;GREEN BAG W/6 PIECES OF CANVAS CLOTHING
  TWO PAIR OF BOOTS

Barcode: E1666997   Location: ECR1                      03/20/2000

SEARCH GEN_____ FOIMS
SERIALIZED_____ INDEXED_____
FILED _____

MAR 2 1 2000

FBI – PITTSBURGH

Case Number:   266A-PG-66703
Owning Office:   PITTSBURGH

(File Copy)

266· PG-66703- 1B1

(29)

Exhibit  B

03/29/00                                    ICMIPR01
10:03:51                    FD-192           Page 1

Title and Character of Case:

JACKMAN, DONALD, G

Date Property Acquired:    Source from which Property Acquired:
                           150 CALDWELL DR, BUTLER PA
    03/14/2000

Anticipated Disposition:  Acquired By:        Case Agent:
                                                            b7C

Description of Property:                       Date Entered
1B 5

#73) NINE (9) WRISTWATCHES (INADVERTENTLY LEFT OFF EVID
RECOVERY LOG AT SCENE ON 3-14-00)

Barcode: E1666928    Location: ECR1              03/29/2000

---

SEARCH GEN_____ FOIMS_____
SERIALIZED_____ INDEXED_____
FILED_____

APR 0 4 2000

FBI – PITTSBURGH

Case Number:  266A-PG-66703
Owning Office:  PITTSBURGH

(File Copy)          266-PG-66703-1B5

(30)

Exhibit B

# ARREST EVIDENCE RECOVERY LOG – CAR/PERSON

PAGE _1_ OF _1_

LOCATION _105 Caldwell Dr., Butler PA_
DATE _03/14/_
CASE IDENTIFIER _26A -PB- 66703_
PREPARER/ASSISTANTS _SA_____
_SA_____

PERSONNEL _SA_____
_SA_____
_SA_____

b7C

| ITEM # | DESCRIPTION | WHERE FOUND | RECOVERED BY | PHOTO | MARKING (Direct–D Indirect–I) | PACKAGING METHOD | MISCELLANEOUS COMMENTS |
|---|---|---|---|---|---|---|---|
| 1 | B-West 9mm Semi-automatic Handgun Serial PO3334 (1 Rnd in weapon & chambered) (a) Magazines | Found underneath Passenger Seat of Vehicle | PSP Troop D | I | I | Plastic Gun case Paper Bag | |
| 2 | (1) Box Winchester SXT Ammunition | Glove Box of Vehicle | PSP Troop D | V | I | Paper Bag | |
| 3 | Tweezers; (2) knives; nail clippers; phtd cards; eraser & chap sticks | On Person | | IV | I | Paper Bag | |

b7C

03/14/2000
HBW

(25)

Exhibit B

# EVIDENCE RECOVERY LOG

PAGE __1__ OF __3__

LOCATION __150 Caldwell Dr., Butler, PA.__
DATE __3/14/00__
CASE IDENTIFIER __266A-PG-66703__                   b7C
PREPARER/ASSISTANTS __[illegible]__

PERSONNEL

| ITEM # | DESCRIPTION | WHERE FOUND | RECOVERED BY | PHOTO | MARKING Direct—D Indirect—I | PACKAGING METHOD | MISCELLANEOUS COMMENTS |
|---|---|---|---|---|---|---|---|
| 1 | SEVEN (7) Misc Boxes | UNDER BED | DPP/BS | Y | D | PAPER BAG | |
| 2 | ONE (1) Sw 9 Keltec 9mm R/A | " " | " " | Y | D | " " | 01907 |
| 3 | 44 Cal Ruger | | " " | Y | D | " " | |
| 4 | Holster Belt + Unk # of Rounds | BEDRoom Floor near bed | DPP/BS | Y | D | " " | |
| 5 | Beretta Handgun | BEDRoom/Nightstand | DPP/BS | Y | D | " " | DAAO75662 |
| | Serial DAA075662 | | | | | " " | |
| 6 | 2 Amm cw/Ammo; 1 Box 22 Ammo | | | | D | " " | 11 mags/unk Rnds |
| 7 | Handgun; unkn Rounds | UNDER BED | | | D | " " | |
| 8 | Two (2) Cricket IED | BASEMENT RoomA | BS/GL | Y | D | " " | ASPD |
| 9 | NUMEROUS Fuses | | | Y | D | " " | |
| 10 | 44 Cal Black Cat Revolver | | BS/GL | Y | D | " " | 186751 |
| | 186751 | | | | | " " | |
| 11 | 12 Gage Ammo (Shotgun) | | BS/GL | | I | " " | |
| 12 | 12 Gage Shotgun | | | | D | " " | |
| 13 | Cricket IED; 2 co2 canisters | | | | D | " " | |
| 14 | Boxes of Various Ammo bulk Quantity | | | | II | " " | |
| 15 | Boxes of 7.62 Ammo/unk Quantity | | | Y | II | " " | |
| 16 | Brass Ammo/Various types | | | | II | " " | |
| 17 | Various Magazines | | | Y | II | " " | |
| 18 | 3 Boxes of Matches | | | Y | II | " " | |
| 19 | Crossbow Pistol Bolts (Ammo) | | | Y | IDS | " " | |
| 20 | Two (2) Shotgun Shells | | | Y | D | " " | |
| 21 | Firearm Parts 870 + 12 gauge | | | Y | D | " " | |
| 22 | ONE (1) Crossbow | | | Y | D | " " | |
| 23 | ONE (1) Box Rifle head | | | | D | " " | |
| 24 | ONE (1) Crossbow | | | Y | D | " " | |
| 25 | 7.62 Ammo (Gun Cal) | | | Y | D | " " | |
| 26 | 5.56 mm Bandoliers | | | Y | D | " " | |
| 27 | Ammo Drum | | | Y | D | " " | |
| 28 | UPS Shipping Sticker | | MJM/MSK | NO | D | " " | |

Exhibit B

# EVIDENCE RECOVERY LOG

PAGE _2_ OF _3_

LOCATION ___150 Caldwell Dr. Butler, PA___
DATE ___3/14/00___
CASE IDENTIFIER ___266A-PG 66703___     b7C
PREPARER/ASSISTANTS _____

PERSONNEL

| ITEM # | DESCRIPTION | WHERE FOUND | RECOVERED BY | PHOTO | MARKING Direct-O Indirect-I | PACKAGING METHOD | MISCELLANEOUS COMMENTS |
|---|---|---|---|---|---|---|---|
| 29 | 44 Black Powder | Office (Rm G) | TL | Y | I | Blue Wipe | 150005 |
| 30 | Black Canvas Bag / Misc. Ecos | " | TL | Y | I | Canvas Bag | |
| 31 | Phone Jets + Literature | " | TL | Y | I | Paper Bag | |
| 32 | Misc Receipts | " | TL | Y | I | | |
| 33 | Misc Papers | " | TL | Y | I | | |
| 34 | Gun Receipts + Vendor Flyers | " | TL | Y | I | | |
| 35 | Box of Powerlets | " | TL | Y | I | | |
| 36 | 44 Cal NAA + 22 Cal NAA w/ Ammo | " | TL | Y | I | | B4-30290 |
| 37 | Blk Canvas Bag w/ ammo + Gas Filth Mask | " | TL | Y | I | | |
| 38 | 3 filled away + 1 partial Pyle w/ comput | " | TL | Y | I | | |
| 39 | Mini 14 Ruger + Mag | " | TL | Y | I | | 185 35858 |
| 40 | Misc Papers | " | TL | Y | I | | |
| 41 | Roller Bearings | Basement (A) | BS / MSG | Y | I | Plastic Metal Canist | |
| 42 | " | " | " | GC | Y | I | |
| 43 | " | " | " | GC | Y | I | |
| 44 | " | " | " | GC | Y | I | |
| 45 | " | " | " | GC | Y | I | |
| 46 | " | " | " | GC | Y | I | |
| 47 | Pyrodex Illuglited Powder | " | BS / USR | Y | I | | Taken By Callaghan |
| 48 | Suspect Explosive Device Iron/2 pipe | " | GC | Y | I | | Bomb 79 Squad |
| 49 | T-375 (misc ) w/ mask By agitation | " | | Y | I | | Squad |
| 50 | Two Lengths of 3in pipe & screen It | " | BS | Y | I | | |
| 51 | Roller Bearings | " | | Y | I | Plastic Paper Bag | |
| 52 | CO2 Cart. UNK Purp | " | | N | I | | |
| 53 | Gun Stock TSBR NAA | " | | N | I | | ATF |
| 54 | AK47 + AR15 Consult w/in lab | " | | | | | |

(M) 3/14/00

*Exhibit B*

# EVIDENCE RECOVERY LOG

PAGE __3__ OF __3__

LOCATION __150 CALDWELL DR. Butler, PA.__
DATE __3/14/00__
CASE IDENTIFIER __266A · PG-66703__
PREPARER/ASSISTANTS

PERSONNEL

b7C

| ITEM # | DESCRIPTION | WHERE FOUND | RECOVERED BY | PHOTO | MARKING Direct—D Indirect—I | PACKAGING METHOD | MISCELLANEOUS COMMENTS ser # |
|---|---|---|---|---|---|---|---|
| 55 | 45 cal. ber | Narcoso | ✓ | Y | D | | S10797 |
| 56 | Tech 9   9mm | intestee A010 | ✓ | Y | D | | A032644 |
| 57 | marlin 30-30 | model 336 A marlin | ✓ | Y | D | | R28780 |
| 58 | 762 cal   SKS | Russian | ✓ | Y | D | | M0063006 ATF |
| 59 | .223 cal | Ruger | ✓ | Y | D | | 250-38806 |
| 60 | 12 Gauge | winchester model 1300 | ✓ | Y | D | | L2767464 |
| 61 | Jukar Blackpowder | Home made | ✓ | Y | D | | |
| 62 | 16 gauge double | winchester model 37 | ✓ | Y | D | | 127571 Not Found |
| 63 | 12 Gauge | Remington model 1100 | ✓ | Y | D | | N990035Y |
| 64 | 16 gauge | Remington .870 | ✓ | Y | D | | 1288889W |
| 65 | .223 cal. | Ruger Ranch | ✓ | Y | D | | 185-44439 |
| 66 | .223 cal m. | Colt | ✓ | Y | D | | CCH015783 |
| 67 | 45 cal. | Marlin model-45 | ✓ | Y | D | | 04609283 |
| 68 | 22 cal | Sears starbuck m2200 | ✓ | Y | D | | D7673894 |
| 69 | 30-06 | winchester m-70 | ✓ | Y | D | | G1937638 |
| 70 | Remington Model 870 from BASEMENT (A) | | ✓ | Y | D | | 1050266 |
| 71 | 2 cole cartridges removed from pistol (item 38) | | | Y | X  I | | |
| 72 | VARIOUS MAG & removed from WEAPONS entered into EVid 3/15/00 | + AMO | | Y | X  I | | |

3/14/00

02/20/02
08:53:34                         FD-192                        ICMIPR01
                                                               Page  1

Title and Character of Case:

JACKMAN, DONALD, G
-

Date Property Acquired:    Source from which Property Acquired:
                           DONALD JACKMAN
     03/14/2000            150   CALDWELL DR
                           BUTLER PA 16002

Anticipated Disposition: Acquired By:              Case Agent:

Description of Property:                                 Date Entered
   1B 3
                                                           b7C
   4)HOLSTER BELT & UNK # OF ROUNDS;6)TWO
   MAGS W/AMMO,1 BOX 22 AMMO;UNK # ROUNDS;8)TWO CRICKET IED;
   11) 12 GAGE AMMO (SHOTGUN);13)CRICKET IED,2 CO CANNISTERS;
   14)BOX OF VARIOUS AMMO UNK QTY;15)BOXES OF 7.62 AMMO,UNK
   QTY;16)BOXES OF MMO/VARIOUS TYPES;17)VARIOUS MAGAZINES;
   18)3 BOXES OF MATCHES;19)CROSSBOW PISTOL BULLETS (AMMO);20)
   TWO SHOTGUN SHELLS;21)FIREARM PARTS 870 & 16 GAUGE;23)ONE
   BOX BULLET HEADS;25)7.62 AMMO (GREEN BOX);26)5.56 MM
   BANDOLLERS;27)AMMO DRUM;28)UPS SHIPPINH STICKER;30)BLACK
   CANVAS BAG/MISC ITEMS;31)POWER LETS & LITERATURE;32)MISC
   RECEIPTS;33)MISC PAPERS;34)GUN RECEIPTS & RESIDENCE PAPERS;
   35)BOX OF POWERLETS;36).44 CAL MAG & .22 CAL & MISC AMMO;37)
   BLACK CANVAS BAG W/AMMO & GAS FILTER MASK;40)MISC PAPERS;
   43-46)ROLLER BEARINGS;
   51)ROLLER BEARINGS;52)CO2 CART;53)GUN
   STOCK & SPRINGS;71)2 CO2 CARTRIDGES REMOVED FRM PELLET GUNS;
   72)VARIOUS MAGS REMOVED FRM WEAPONS AND AMMO;#2)BOX
   WINCHESTER SXT AMMO;#3)TWEEZERS,2 KNIVES,NAIL CLIPPERS,PAID
   CARD,ENVELOPE,CHAPSTICK,MINTS

   Barcode: E01991794    Location: ECR1                     03/20/2000

   41-42 ROLLER BEARINGS;

   Barcode: E01991478    Location: ECR1                     02/12/2002

   1)SEVEN   MISC BOOKS;

   Barcode: E01991098    Location: ECR1                     02/20/2002

                                                    FILE COPY

   Case Number:   266A-PG-66703
   Owning Office:  PITTSBURGH

                          266·PG·66703· 163
                                           B5195

                                              Exhibit  B

02/20/02                                    ICMIPR01
08:24:01                  FD-192             Page   1

Title and Character of Case:

JACKMAN, DONALD, G
-

| Date Property Acquired: | Source from which Property Acquired: |
|---|---|
| 03/14/2000 | DONALD JACKMAN<br>150   CALDWELL DR<br>BUTLER PA 16002 |

Anticipated Disposition: Acquired By:              Case Agent:

                                                              b7C

Description of Property:                          Date Entered
1B 4

10).44 CAL BLACK CAL REVOLVER;22)CROSS
BOW;24)ONE CROSSBOW;29)44 BLACK POWDER;
38)3 PELLET GUNS & 1 PELLET RIFLE;
61)JUKAR BLACKPOWDER (HOMEMADE);
#1) B-WEST 9MM SEMIAUTOMATIC
HANDGUN SN# P03334

Barcode: E1666871    Location: ECR1    GCAB 4         03/20/2000
Rendered Safe:
                                      b7C

2)SUB 9 KELTEL 9MM RIFLE;5)BERETTA HANDGUN;
12)12 GAUGE SHOTGUN;
36).44 MAG & 22 CAL;
39)MINI 14 RUGER;55)45 CAL
56)TECH 9 9MM;57)MARLIN 30-30; 59).22 CAL;60)12 GAUGE;
62)16 GAUGE WINCHESTER MODEL
37;63)12 GAUGE REMINGTON MODEL 1100;64)16 GAUGE REMINGTON
870;65)223 CAL RUGER RANCH;66)223 CAL COLT;67)45 CAL MARLIN
MODEL 45;68).22 CAL SEARS 7 ROBUCK M2200;69)30-06 WINCHESTER
M-70;70)REMINGTON MODEL 870;
HANDGUN SN# P03334

Barcode: E0199188    Location: ECR1    GCAB 4         02/14/2002
Rendered Safe:

3).44 CAL RUGER;                                      b7C

Barcode: E01992319    Location: ECR1    GCAB 4        02/15/2002
Rendered Safe:

FILE COPY

Case Number:   266A-PG-66703
Owning Office:   PITTSBURGH

266A-PG-66703-1B4

Exhibit  8

OMB NO. 1512-0129

**DEPARTMENT OF THE TREASURY**
BUREAU OF ALCOHOL, TOBACCO AND FIREARMS
**FIREARMS TRANSACTION RECORD PART I – OVER-THE-COUNTER**

TRANSFEROR'S TRANSACTION SERIAL NUMBER
17-48-27

NOTE: Prepare in original only. All entries on this form must be in ink. See Important Notices, Definitions and Instructions

**SECTION A - MUST BE COMPLETED PERSONALLY BY TRANSFEREE (BUYER)**

| 1. TRANSFEREE'S (Buyer's) NAME (Last, First, Middle) | | 2. HEIGHT | 3. WEIGHT | 4. RACE |
|---|---|---|---|---|
| Jackman Donald George  ☒ MALE ☐ FEMALE | | 5'9" | 196 | WC |

5. RESIDENCE ADDRESS (No., Street, City, County, State, ZIP Code)   Butler

253 Rockdale Rd  Butler  Pa  16002

| 6. DATE OF BIRTH | | | 7. PLACE OF BIRTH (City) Butler |
|---|---|---|---|
| MONTH | DAY | YEAR | STATE OR FOREIGN COUNTRY |
| 01 | 01 | 57 | Penn |

8. CERTIFICATION OF TRANSFEREE (Buyer) - Questions a. through l. must be answered with a "yes" or a "no" inserted in the box at the right of the question.

a. Are you the actual buyer of the firearm indicated below? If your answer no to this question the dealer cannot transfer the firearm to you. (See Important Notice 1.) — **Yes**

b. Are you under indictment or information in any court for a crime for which the judge could imprison you for more than one year? An information is a formal accusation of a crime made by a prosecuting attorney. — **No**

c. Have you been convicted in any court of a crime for which the judge could have imprisoned you for more than one year, even if the judge actually gave you a shorter sentence? (See Important Notice 3 and EXCEPTION.) — **No**

d. Are you a fugitive from justice? — **No**

e. Are you an unlawful user of, or addicted to, marijuana, or any depressant, stimulant, or narcotic drug, or any other controlled substance? — **No**

f. Have you ever been adjudicated mentally defective or have you been committed to a mental institution? — **No**

g. Have you been discharged from the Armed Forces under dishonorable conditions? — **No**

h. Are you an alien illegally in the United States? — **No**

i. Have you ever renounced your United States citizenship? — **No**

j. Are you subject to a court order restraining you from harassing, stalking, or threatening an intimate partner or child of such partner? (See Important Notice 4 and Definition 4.) — **No**

k. Have you been convicted in any court of a misdemeanor crime of domestic violence? This includes any misdemeanor conviction involving the use or attempted use of physical force committed by a current or former spouse, parent, or guardian of the victim or by a person with a similar relationship with the victim. (See Important Notice 5 and Definition 5.) — **No**

l. Are you a citizen of the United States? — **Yes**

m. What's your State of residence? Pennsylvania (State)

If you are not a citizen of the United States, you have a State of residence only if you have resided in the State for at least 90 days prior to the date of this sale. (See Definition 6.)

I CERTIFY THAT THE ABOVE ANSWERS ARE TRUE AND CORRECT. I UNDERSTAND THAT A PERSON WHO ANSWERS "YES" TO ANY OF THE QUESTIONS 8b THROUGH 8k IS PROHIBITED FROM PURCHASING OR POSSESSING A FIREARM. I ALSO UNDERSTAND THAT THE MAKING OF A FALSE ORAL OR WRITTEN STATEMENT OR THE EXHIBITING OF ANY FALSE OR MISREPRESENTED IDENTIFICATION WITH RESPECT TO THIS TRANSACTION IS A CRIME PUNISHABLE AS A FELONY. I FURTHER UNDERSTAND THAT MY REPETITIVE PURCHASE OF FIREARMS FOR THE PURPOSE OF RESALE FOR LIVELIHOOD AND PROFIT WITHOUT A FEDERAL FIREARMS LICENSE IS A VIOLATION OF LAW. (SEE IMPORTANT NOTICE 8)

TRANSFEREE'S (Buyer's) SIGNATURE  Donald G. Jackman Jr.   DATE 11-18-98

**SECTION B - TO BE COMPLETED BY TRANSFEROR (SELLER)**

THE PERSON DESCRIBED IN THIS SECTION HAS IDENTIFIED HIMSELF/HERSELF TO ME IN THE FOLLOWING MANNER:

9. TYPE OF AND NUMBER ON IDENTIFICATION (Driver's license or identification which shows name, date of birth, place of residence, and signature. Purchasers who are aliens must provide a valid government-issued photo identification. See Instructions to Transferor 1 and 2.)
DL# 18 285 197

10. TYPES AND DATES OF ADDITIONAL IDENTIFICATION REQUIRED FOR ALIENS (e.g., utility bills or lease agreements. See Instruction to Transferor 2).

On the basis of (1) the statements in Section A; (2) the verification of identity noted in Section B; and (3) the information in the current list of Published Ordinances, it is my belief that it is not unlawful for me to sell, deliver, transport, or otherwise dispose of the firearm(s), described below and on the back, to the person identified in Section A.

| 11. TYPE (Pistol, Revolver, Rifle, Shotgun, etc.) | 12. MODEL | 13. CALIBER OR GAUGE | 14. SERIAL NO. | 15. MANUFACTURER (and importer, if any) |
|---|---|---|---|---|
| 1. Rifle | MT6700 | 223 | MCHCV157780 | Colt |
| 2. | | | | |
| 3. | | | | |
| 4. | | | | |

Complete ATF F 3310.4 for multiple purchases of handguns (See Instruction to Transferor 7.)

16. TRADE/CORPORATE NAME AND ADDRESS OF TRANSFEROR (Seller) (Hand stamp may be used.)
BRUNNHUBER'S SUPPLY
245 FREEPORT RD.
BUTLER, PA 16002
724-207-4294

17. FEDERAL FIREARMS LICENSE NO. (Hand stamp may be used.)

THE PERSON ACTUALLY MAKING THE FIREARMS SALE MUST COMPLETE ITEMS 18 THROUGH 20.

| 18. TRANSFEROR'S (Seller's) SIGNATURE | 19. TRANSFEROR'S TITLE | 20. TRANSACTION DATE |
|---|---|---|
| | Sales | 11/18/98 |

*Exhibit B*

## IMPORTANT NOTICES TO TRANSFEROR (SELLER) AND TRANSFEREE (BUYER)

Under 18 U.S.C. 921-929 firearms may not be sold to or received by certain persons. The information and certification on this form are designed so that a person licensed under 18 U.S.C. 921-929 may determine if he may lawfully sell or deliver a firearm to the person identified in Section A, and to alert the transferee (buyer) of certain restrictions on the receipt and possession of firearms. This form should not be used for sales or transfers where neither person is licensed under 18 U.S.C. 921-929.

2. **WARNING**--*A licensee who knowingly sells or delivers a firearm to a straw purchaser violates Federal firearms laws. A "straw purchase" occurs when the actual buyer uses another person (the straw purchaser) to execute an ATF Form 4473 purporting to show that the straw purchaser is the actual buyer. Straw purchases also place the straw purchaser and the actual buyer in violation of law. Although the actual buyer may be eligible to receive firearms, a straw purchase results in the falsification of the licensee's records with respect to the identity of the actual buyer.*

3. The transferee (buyer) of a firearm should be familiar with the provisions of law. Generally, 18 U.S.C. 921-929 prohibit the shipment, transportation, receipt, or possession in or affecting interstate commerce of a firearm by one who is under indictment or information for, or who has been convicted of, a crime punishable by imprisonment for a term exceeding one year, by one who is a fugitive from justice, by one who is an unlawful user of, or addicted to, marijuana, or any depressant, stimulant, or narcotic drug, or any other controlled substance, by one who has been adjudicated mentally defective or has been committed to a mental institution, by one who has been discharged from the Armed Forces under dishonorable conditions, by one who, having been a citizen of the United States, has renounced his citizenship, or by who is an alien illegally in the United States. "Conviction of a crime punishable by imprisonment for a term exceeding one year", includes felonies, and state offenses classified by the laws of the state as a misdemeanor that are punishable by more than 2 years in prison.

EXCEPTION: For one who has been convicted of a crime punishable by imprisonment for a term exceeding one year, the prohibition does not apply if, under the law where the conviction occurred, the individual has received a pardon for the crime, the conviction has been expunged or set aside, or the person has had his/her civil rights restored, AND the person is not prohibited by the law of the jurisdiction in which the proceedings were held from receiving or possessing any firearms.

KNOW YOUR CUSTOMER--Before a licensee may sell or deliver a firearm to a nonlicensee, the licensee must establish the identity, place of residence, and age of the buyer. Satisfactory identification should verify the buyer's name, date of birth, address, and signature. Thus, a driver's license or identification card issued by a State in place of a license is particularly appropriate. Social Security cards are not acceptable because no address or date of birth is shown on the card. Also, alien registration receipt cards and military identification cards are not acceptable by themselves because the State of residence is not shown on the cards. However, although a particular document may not be sufficient to meet the statutory requirement for identifying the buyer, any combination of documents which together disclose the required information concerning the buyer is acceptable.

4. Under 18 U.S.C. 922 firearms may not be sold to or received by persons subject to a court order that: (A) was issued after a hearing of which the person received actual notice and had an opportunity to participate; (B) restraining such person from harassing, stalking or threatening an intimate partner or child of such intimate partner or person, or engaging in other conduct that would place an intimate partner in reasonable fear of bodily injury to the partner or child; and (C) (i) includes a finding that such person represents a credible threat to the physical safety of such intimate partner or child; or (ii) by its terms explicitly prohibits the use, attempted use, or threatened use of physical force against such intimate partner or child that would reasonably be expected to cause bodily injury.

## INSTRUCTIONS TO TRANSFEREE (BUYER)

5. The buyer (transferee) of a firearm will, in every instance, personally complete Section A of the form and certify (sign) that the answers are true and correct. However, if the buyer is unable to read and/or write, the answers may be written by other persons, excluding the dealer. Two persons (other than the dealer) will then sign as witnesses to the buyer's answers and signature.

6. When the transferee (buyer) of a firearm(s) is a corporation, company, association, partnership or other such business entity, an officer authorized to act on behalf of the business will complete and sign Section A of the form and attach a written statement, executed under penalties of perjury, stating (a) that the firearm(s) is being acquired for the use of and will be the property of that business entity, and (b) the name and address of that business entity.

## INSTRUCTIONS TO TRANSFEROR (SELLER)

7. Should the buyer's name be illegible the seller shall print the buyer's name above the name printed by the buyer.

8. The transferor (seller) of a firearm will, in every instance, complete Section B of the form.

9. Additional firearms purchases made by the same buyer may not be added to this form after the seller has signed and dated it.

10. If more than four firearms are involved, the identification required by Section B, Items 11 through 15, must be provided for each firearm. The identification of the firearms transferred in a transaction which covers more than four weapons may be on a separate sheet of paper which must be attached to the form covering the transaction.

11. In addition to completing this record, you must report any multiple sale or other disposition of pistols or revolvers on ATF F 3310.4 in accordance with 27 CFR 178.126a.

12. The transferor (seller) of a firearm is responsible for determining the lawfulness of the transaction and for keeping proper records of the transaction. Consequently, the transferor should be familiar with the provisions of 18 U.S.C. 921-929 and the Federal firearms regulations, Title 27, Code of Federal Regulations, Part 178. In determining the lawfulness of the sale or delivery of a rifle or shotgun to a non-resident, the transferor is presumed to know applicable State laws and published ordinances in both States.

13. After you have completed the firearm transaction, you must make the completed, original copy of the ATF F 4473, Part I part of your permanent firearms records including any supporting documents. Filing may be chronological (by date), alphabetical (by name), or numerical (by transaction serial number), so long as all of your completed Forms 4473, Part I are filed in the same manner.

## DEFINITIONS

1. Over-the-counter Transaction--The sale or other disposition of a firearm by the transferor (seller) to a transferee (buyer), occurring on the transferor's licensed premises. This includes the sale or other disposition of a rifle or a shotgun to a non-resident transferee (buyer) occurring on such premises.

2. Published Ordinances--The publication (ATF P 5300.5) containing State firearms laws and local ordinances which is annually distributed to Federal firearms licensees by the Bureau of Alcohol, Tobacco and Firearms.

3. Under indictment or convicted in any court-- An indictment or conviction in any Federal, State or Foreign court.

4. Intimate Partner--With respect to a person, the spouse of the person, a former spouse of the person, an individual who is a parent of a child of the person, and an individual who cohabitates with or has cohabitated with the person.

PAPERWORK REDUCTION ACT NOTICE. The information required on this form is in accordance with the Paperwork Reduction Act of 1980. The purpose of the information is to determine the eligibility of the buyer (transferee) to receive firearms under Federal Law. The information is subject to inspection by ATF officers. The information on this form is required by 18 U.S.C. 922.

The estimated average burden associated with this collection is 6 minutes per respondent or recordkeeper, depending on individual circumstances. Comments concerning the accuracy of this burden estimate and suggestions for reducing this burden should be directed to Reports Management Officer, Information Programs Branch, Bureau of Alcohol, Tobacco and Firearms, Washington, D.C., 20226, and the Office of Management and Budget, Paperwork Reduction Project (1512-0129), Washington, D.C., 20503.

ATF F 4473 (5300.9) PART I (8-94)

*U.S. Government Printing Office: 1995 — 387-593/25019

*Exhibit B*



# State of North Carolina

PCAR140   (30)

NORTH CAROLINA DEPARTMENT OF CORRECTION

POST-RELEASE SUPERVISION AND PAROLE COMMISSION

JAMES B. HUNT JR.                                         COMMISSIONERS
    GOVERNOR              831 W MORGAN STREET          ELBERT T. BUCK
                            P O BOX 29540              WILLIAM A. LOWRY
JUANITA M. BAKER         RALEIGH NC 27626-0540         CHARLES L. MANN,SR.
    CHAIRMAN                                           PEGGY M. STAMEY
                            (919) 733-3414

RE: DOC ID: 0201997
P/PO: JCB01    CHIEF: FRL03    FACL: 51608
                    CERTIFICATE OF UNCONDITIONAL DISCHARGE

        (AND RESTORATION OF FORFEITED RIGHTS OF CITIZENSHIP FOR FELONS)
KNOW EVERYONE BY THESE PRESENTS:

WHEREAS, DONALD G JACKMAN          WAS ON OCTOBER   03,1989 COMMITTED TO THE
NORTH CAROLINA DEPARTMENT OF CORRECTION FROM:

| COURT | COUNTY | SENTENCE LENGTH MIN TO MAX | CRIME | DOCKET |
|-------|--------|-----|-------|--------|
| SUPERIOR | CATAWBA | 0000000  0070000 | TRAFFICK COCAINE 28- | 88013868 F |
| SUPERIOR | CATAWBA | 0000000  0050000 | POSSESS NITS SCHEDUL | 88013869 F |
| SUPERIOR | CATAWBA | 0000000  0050000 | POSSESS NITS SCHEDUL | 88013870 F |

AND WAS PAROLED OR CONDITIONALLY RELEASED ON NOVEMBER  06, 1996 AND THE
POST-RELEASE SUPERVISION AND PAROLE COMMISSION BY THE AUTHORITY OF
SECTIONS 15A-1372(C)/148.49.15(D) OF THE GENERAL STATUTES OF NORTH CAROLINA,
DOES HEREBY GRANT TO SAID OFFENDER AN UNCONDITIONAL DISCHARGE FROM
SENTENCE(S).

            FOR CONVICTED FELONS ONLY - RESTORATION OF RIGHTS

PURSUANT TO SECTION 13-1 OF THE GENERAL STATUTES OF NORTH CAROLINA, ALL RIGHTS
OF CITIZENSHIP WHICH WERE FORFEITED ON CONVICTION ARE BY LAW AUTOMATICALLY
RESTORED WITH THE EXCEPTION OF THE RIGHT TO OWN, POSSESS, RECEIVE, BUY OR
OTHERWISE ACQUIRE FIREARMS. THIS RIGHT IS PRECLUDED FOR FIVE YEARS TO SOME
FELONS BY SECTION 14-415.1 OF THE GENERAL STATUTES OF NORTH CAROLINA.

THE POST-RELEASE SUPERVISION AND PAROLE COMMISSION DOES HEREBY CERTIFY THAT,
PURSUANT TO SECTIONS 13.1/13.2/148-49.15(D) OF THE GENERAL STATUTES OF
NORTH CAROLINA, ALL RIGHTS OF CITIZENSHIP WHICH THE SAID:
DONALD G JACKMAN                          FORFEITED ON CONVICTION
ARE BY LAW AUTOMATICALLY RESTORED.

IN WITNESS WHEREOF THIS CERTIFICATE BEARING THE SEAL OF THE NORTH CAROLINA
POST-RELEASE SUPERVISION AND PAROLE COMMISSION IS ISSUED, THIS THE 16TH DAY
OF JANUARY   , 1997

                    COMMISSIONER:  ELBERT T. BUCK

                    COMMISSIONER:  PEGGY M. STAMEY

*Exhibit  B*

that under Fourth Circuit precedent, state law determines which, if any, weapons an ex-felon with civil rights restored may lawfully possess and that under the North Carolina Felony Firearms Act, N.C.Gen.Stat. § 14-415.1,[3] possession of a firearm such as Tomlinson's, which had a barrel length of at least eighteen inches and an overall length of at least twenty-six inches, might lawfully be possessed by him as an ex-felon.

The Government's response was to file a superseding indictment alleging that in addition to the gun, Tomlinson was in possession of five rounds of twelve-gauge ammunition in violation of § 922(g)(1). Tomlinson then moved again to dismiss, generally reiterating the above argument, and in addition noting that the Firearms Act does not in any way restrict the possession of ammunition. The Government then filed a response to the new motion to dismiss. In it the Government argued for the first time that Tomlinson's gun, the Mossberg, was a "weapon of mass death and destruction" and thus was prohibited from possession by an ex-felon under N.C.Gen.Stat. § 14-415.1, notwithstanding that it met the statutory length requirements. Under North Carolina law, "weapons of mass death and destruction" include:

Any type of weapon (other than a shotgun or a shotgun shell of a type particularly suitable for sporting purposes) which will, or which may be readily converted to, expel a projectile by the action of an explosive or other propellant, and which has any barrel with a bore of more than one-half inch in diameter.

N.C.Gen.Stat. § 14-288.8. According to the Government, Tomlinson's gun was not a "shotgun" (because it could not be accurately

aimed or fired from the shoulder), nor was it "particularly suitable for sporting purposes."

[1]  A hearing on Tomlinson's motion to dismiss was held. On the key question whether the firearm was, within the meaning of N.C.Gen.Stat. § 14-288.8, a "weapon of mass death and destruction," the district court ultimately sided with the Government. An order was entered denying the motion to dismiss:

[I]n view of the "whole of North Carolina law," *United States v. McLean*, 904 F.2d 216, 218 (4th Cir.1990) the pistol grip Mossberg twelve-gauge, 500A "Persuader" shotgun, classified as a "security" weapon by its manufacturer, discovered beneath the defendant's coat is a "weapon of mass destruction" and not suited for sporting purpose. As such, its possession was illegal, even by the defendant whose civil rights had been restored following a drug conviction. *See also* N.C.Gen.Stat. §§ 14-415.1(a).  J.A. 95.[4]

After further defense motions focusing primarily on the mass death and destruction issue were made and denied, the case was tried to a jury in September 1993. At trial, the Government presented three witnesses, all law enforcement officers, who testified variously that Tomlinson possessed the gun in question, that the gun was a Mossberg twelve-gauge shotgun, and that Tomlinson previously had been convicted of a crime punishable by imprisonment for a term exceeding one year.

Following the testimony of the Government's last witness, an agent with the Bureau of Alcohol, Tobacco and Firearms (ATF), defense counsel conducted a voir dire examination of this witness outside the pres-

3.  Section 14-415.1(a) of the North Carolina General Statutes states in its entirety:

It shall be unlawful for any person who has been convicted of any crime set out in subsection (b) of this section to purchase, own, possess, or have in his custody, care, or control any handgun or other firearm with a barrel length of less than 18 inches or an overall length of less than 26 inches, or any weapon of mass death and destruction as defined in G.S. 14-288.8(c), within five years from the date of such conviction. N.C.Gen.Stat. § 14-415.1(a).

4.  We understand the district court's full reasoning to be that (1) the Mossberg "Persuader" has

the two features that qualify it as a "weapon of mass death and destruction" under the basic statutory definition—*i.e.*, that it "will ... expel a projectile by the action of an explosive" (a shotgun shell) and it "has [a] barrel with a bore of more than one-half inch in diameter," and that (2) it does not have a critical feature that would bring it within the statutory exception—*i.e.*, that though a "shotgun," it is not one "of a type particularly suitable for sporting purposes."

We agree with that analysis as a matter of statutory interpretation and application.

(d)(1) Any firearm or ammunition involved in or used in any knowing violation of subsection (a)(4), (a)(6), (f), (g), (h), (i), (j), or (k) of section 922, or knowing importation or bringing into the United States or any possession thereof any firearm or ammunition in violation of section 922(*l*), or knowing violation of section 924, or willful violation of any other provision of this chapter or any rule or regulation promulgated thereunder, or any violation of any other criminal law of the United States, or any firearm or ammunition intended to be used in any offense referred to in paragraph (3) of this subsection, where such intent is demonstrated by clear and convincing evidence, shall be subject to seizure and forfeiture, and all provisions of the Internal Revenue Code of 1986 relating to the seizure, forfeiture, and disposition of firearms, as defined in section 5845(a) of that Code, shall, so far as applicable, extend to seizures and forfeitures under the provisions of this chapter: *Provided,* That upon acquittal of the owner or possessor, or dismissal of the charges against him other than upon motion of the Government prior to trial, or lapse of or court termination of the restraining order to which he is subject, the seized or relinquished firearms or ammunition shall be returned forthwith to the owner or possessor or to a person delegated by the owner or possessor unless the return of the firearms or ammunition would place the owner or possessor or his delegate in violation of law. Any action or proceeding for the forfeiture of firearms or ammunition shall be commenced within one hundred and twenty days of such seizure.

(2)(A) In any action or proceeding for the return of firearms or ammunition seized under the provisions of this chapter, the court shall allow the prevailing party, other than the United States, a reasonable attorney's fee, and the United States shall be liable therefor.

(B) In any other action or proceeding under the provisions of this chapter, the court, when it finds that such action was without foundation, or was initiated vexatiously, frivolously, or in bad faith, shall allow the prevailing party, other than the United States, a reasonable attorney's fee, and the United States shall be liable therefor.

(C) Only those firearms or quantities of ammunition particularly named and individually identified as involved in or used in any violation of the provisions of this chapter or any rule or regulation issued thereunder, or any other criminal law of the United States or as intended to be used in any offense referred to in paragraph (3) of this subsection, where such intent is demonstrated by clear and convincing evidence, shall be subject to seizure, forfeiture, and disposition.

418

(D) The United States shall be li paragraph only to the extent provi Acts.

(3) The offenses referred to in subsection are—

(A) any crime of violence, a 924(c)(3) of this title;

(B) any offense punishable Act (21 U.S.C. 801 et seq.) or th and Export Act (21 U.S.C. 951 c

(C) any offense described i 922(a)(5), or 922(b)(3) of this tit tion intended to be used in an pattern of activities which incl described in section 922(a)(1), of this title;

(D) any offense described in the firearm or ammunition is int by the transferor of such firearm

(E) any offense described in 922(n), or 924(b) of this title; an

(F) any offense which may b United States which involves ammunition.

(e)(1) In the case of a person wh title and has three previous convicti section 922(g)(1) of this title for a v offense, or both, committed on occasi such person shall be fined not more th less than fifteen years, and, notwiths law, the court shall not suspend the s ary sentence to, such person with r section 922(g).

(2) As used in this subsection—

(A) the term "serious drug offer

(i) an offense under the ( U.S.C. 801 et seq.), the Con Export Act (21 U.S.C. 951 c Law Enforcement Act (46 I which a maximum term of more is prescribed by law; or

(ii) an offense under State distributing, or possessing w

419

Exhibit 8



Donald G. Jackman, Jr. #06804068
Federal Correctional Institution, Mckean
P.O. Box 80000
Bradford, Pa.  16701

Clerk
U.S. District Court W.D.Pa.
P.O. Box 1805
Pittsburgh, Pa.   15219                    Date: March 21, 2006

Re: Return of file stamped copy,

Dear: Clerk

    Greetings, find enclosed a copy for scanning (un-stapled) and one copy for file stamping and returning in the supplied S.A.S.E.. Also enclosed are the attachments for the motion for the return of property un-stapled for scanning also. Your assistance and cooperation is appreciated with your response anticipated. Thank you.


Very truely yours,

Donald G. Jackman, Jr.


cc: file

Donald G
Federal
Mckean
P.O. Box 8000
Bradford, Pa.    16701

"LEGAL MAIL"
SPECIAL MAIL





FEDERAL CORRECTIONAL INSTITUTION MCKEAN
P.O. Box 8000
Bradford, PA 16701

clerk's Office
United States district Court
Western District of Pennsylvania
U.S. Post Office and Courthouse
P.O. Box 1805
Pittsburgh, Pa.    15219

"LEGAL MAIL SPECIAL MAIL"