## IN THE UNITED STATES DISTRICT COURT
## FOR THE WESTERN DISTRICT OF PENNSYLVANIA

United States of America    )
                             )
                             )
           v.                )    Civil No. 04-1098
                             )       (Crim.No. 00-72)
Donald G. Jackman, Jr.    )
                   Defendant )

## MOTION FOR RELIEF FROM JUDGMENT AND ORDER
## UNDER FEDERAL RULES OF CIVIL PROCEDURE
## RULE 60(b)

COMES NOW, Defendant in the above named and captioned case under Fed.R.Civ.P. Rule 60(b) for relief from judgment of the opinion and order of the United States District Court for the Western District of Pennsylvania dated December 21, 2006 and received on or about December 27th, 2006, denying Motion to Vacate Sentence Under 28 USCS § 2255. In support of said 60(b) motion Petitioner says and states the following:

1.    That extraordinary circumstances exist justifying relief from the judgment and order denying the Motion under §2255. They are in part as follows:

i.    That the district court lacked jurisdiction to rule on the §2255 motion in light of the fact the case was under motion to transfer to the federal court of claims. Under 28 USCS § 1292(d)(4)(B) no actions could have been taken on the §2255 motion until 60 days has passed after the granting or denying of the transfer motion to the Federal Court of Claims.

## IN THE UNITED STATES DISTRICT COURT
## FOR THE WESTERN DISTRICT OF PENNSYLVANIA

United States of America   )
                          )
                          )
       v.           )   Civil No. 04-1098
                          )     (Crim.No. 00-72)
                          )
Donald G. Jackman, Jr.   )
           Defendant )

### MOTION FOR RELIEF FROM JUDGMENT AND ORDER
### UNDER FEDERAL RULES OF CIVIL PROCEDURE
### RULE 60(b)

COMES NOW, Defendant in the above named and captioned case under Fed.R.Civ.P. Rule 60(b) for relief from judgment of the opinion and order of the United States District Court for the Western District of Pennsylvania dated December 21, 2006 and received on or about December 27th, 2006, denying Motion to Vacate Sentence Under 28 USCS § 2255. In support of said 60(b) motion Petitioner says and states the following:

1.   That extraordinary circumstances exist justifying relief from the judgment and order denying the Motion under §2255. They are in part as follows:

i.   That the district court lacked jurisdiction to rule on the §2255 motion in light of the fact the case was under motion to transfer to the federal court of claims. Under 28 USCS § 1292(d)(4)(B) no actions could have been taken on the §2255 motion until 60 days has passed after the granting or denying of the transfer motion to the Federal Court of Claims.

The motion to transfer to the court of claims can be verified at (DOC 169) with the denial at page 35 no. 3 of the opinion order.

  **ii.** That the denying of the motion to produce audio tapes as listed on ¶3 of pg. 5 of the opinion order was for evidence contained on the tapes which would conclusively establish the miscarriage of justice committed by the AUSA Picking at trial which tainted the jury into ruling counter to instructions and with the belief that Plaintiff was making handgrenades and killing people when no such acts occurred. Acts which denied Plaintiff a fair trial resulting in a procedural rights violation which states a claim upon which relief can be granted. The lacking of this information would forbade any full and complete finding on the merits of this claim.

  **iii.** That evidentiary hearing[s] not being held have resulted in the findings by the district court lacking in substantive evidence that if included in the findings would have required a differnt ruling. (1) the Freedom of Information Act request for judicial review pertained in part to Firearm purchase records which established that Plaintiff had made four years worth of government approved purchases. This would show a lack of criminal intent on the part of the plaintiff requiring a mens rea finding of scienter per the holding of <u>Staples v. United States</u>, 128 L Ed.2d 608 (1994). Making Purchases with restoration of Rights Documentation and Firearm purchases being approved is not a showing of criminal intent. (2) Other information in FOIA requests involved the statutory requirements of Title 26 USCS § 5845(f) and 27 CFR 179.24 which require a destructive device determination to be made by the Secretary of the BATF&E. A determination made by the USA's application to the BATF&E which came back that none of the devices

were destructive devices requiring registration. (The same devices that plaintiff was prosecuted for) The foregoing evidence being in the possession of Attorney Efrem Grail as well as AUSA Picking. A clear showing of Ineffective Assistance of Counsel and a vindictive prosecution done in an arbitrary and capricious manner. This being both a substantive and procedural rights violation.

iv.  The district court as it relates to the denied motions so far listed has made findings (not of fact) excluding exculpatory evidence in its biased determinations. The denied discovery request contained documentation which would have refuted the claims presented by the government. The requested firearm purchase records withheld by the AUSA would conclusively show approved purchases (Government approved conduct), the destructive device determinations required by statute and withheld show "NO" violation of federal law and it is absurd to believe they do not have a bearing on Mr. Jackman's claims. It is a clear and undisputable showing of a substantive rights violation while proof of no crime committed. This is not a frivolous claim as stated by Judge Cohill on pg. 6 ¶ 3. That the statement of facts, not allegations as termed by the district court, would according to <u>United States vs. Day</u>, 969 F.2d 39,41-42(3rd Cir. 1992) cited by the district court require a hearing. The only means based on the facts that the district court could deny a hearing would be to have accepted the petitioners claims as false. (abusing its discretion)

The district court goes on further in ¶4 to state that "He offers no credible evidence or support to merit a hearing." Extraordinary circumstances exist when evidence withheld is exculpatory establishing innocence. The denial of the discovery motion and review of the

(3)

FOIA request for the BATF&E Determinations both being detrimental
evidence towards the government, appears on its face to show favoratism.
It flies in the face of justice for an impartial jurist to not want
to know the truth. This evidence withheld would offer "credible" support
to Plaintiff's claims. If Judge Cohill would not have allowed the many
miscarriage of justice acts of which Mr. Jackman has based several of
his claims, a hearing would have occurred. At present justice requires
a hearing on the matters put forth in the §2255.

2.    Mr. Jackman, hereinafter Plaintiff, will attempt to address the
many issues in the Opinion and Order dated December 21, 2006, beginning
on page 7 at I. Standard of Review under 28 U.S.C.§2255. Before proceeding
further it is also to be understood that this is not a further proceeding
or a secondary proceeding under §2255. It is a Rule 60(b) Motion for
relief from the unjust judgment imposed by the district court which
has been rendered lacking several pieces of relevant evidence, and
other incorrect evidence which has portrayed plaintiff in an undesierable
manner not consistent with actual events. Being extrinsic fraud has
been committed on the part of the government, mistake, and newly dis-
covered evidence (evidence in attorney's possession and not then known
to plaintiff) review is proper under Fed.R.Civ.P. 60(b); See Gonzalez
v. Crosby, 162 L.Ed.2d 480 (2005) Id at pg.496 [1j,2k,3h,7g]

i.    That under the standard of review cited by the district court
Petitioner has stated claims actionable by §2255 and "exceptional cir-
cumstances" exist constituting a miscarriage of justice. Id at [417
US 346] ¶3[2] Davis v. United States, 417 U.S. 333 (1974) 41.L.Ed.2d
109, 94 S.Ct.2298. That claims presented were actionable and not prop-

perly addressed by the district court and could not have been due to
omissions and deletions of the transcribed record. That Plaintiff's
sentence is unconstitutional i.e. it imprisons for constitutionally
protected activity. With continued attempts being made by Plaintiff
during his stay in the jail prior to trial (starting two years after
arrest) to have the same issues raised on the §2255 (with some occurring
after trial) addressed by counsel. With counsel possessing exculpatory
evidence (BATF&E determinations required by 26 USCS § 5845(f) & 27
CFR 179.24) and refusing as Public Defender Sims did to force the AUSA
in discovery to turn over Approved Firearm Purchase Records, still
not turned over by the AUSA. There was the issue of the speedy trial
which true was raised by Attorney Grail but was not fully supported
as to render its filing usless.

　　　Then there is the fact that Plaintiff still has not had oppor-
tunity to confront his original accuser nor the circumstances leading
up to his false accusations. As such the "record" is full of incorrect
and out of context information. The standard of review claimed by the
district court would appear to be improper.

3.　　**Factual Background,** here Plaintiff will start at page 8 of the
opinion and order attempting to dispel several myths and misconstrued
facts. The first being the letter concerning him and a female indi-
vidual. That the letter to the FBI about shooting her in the knee
infers that the handgun purchase was by the same person. The first
was to get an investigation in to her being over medicated with prozac,
and the second was my purchasing the pistol for Carole (my then girl
friend) for protection from her boss's girl friend who had made threat-

ening remarks to Carole about not messing with her Man who was Carole's boss. This has been construed as otherwise with the purchase being witnessed by either Agent Sharp or Smith. who was at the display counter to our right and has not come forward to state the information was incorrectly stated. (Purchase at Sportsman Supply)

The issue that has been totally taken out of context to the point of being an outright lie is the issue of the Confidential Source. The source (Sgt.Mark Bowman) who was caught committing acts against the United States (theft, attempted fraud, unauthorized dispersment of supplies and materials and attempting to secure secrets bids on a bogus auction [the act which lead to him being investgated when the ad was placed in the Butler Eagle News Paper] has been continually and incorrectly inferred to be his coming forth when the fact is it was nothing more than his attempts to get out of trouble and use Plaintiff as a scapegoat.

That further concerning these false accusations it was regular talk at Wooding's Industrial, Corp. concerning Y2-K and what might happen. Other co-workers also expressed the opinion that they too would also defend any taking of weapons which is nothing more than what the Declaration of Independence Requires. It was Mr. Bowman who was continually attempting to get assistance when they were out on training exercises to help him steal a M-16. This was right in line with the continual selling of stolen equipment from his fellow reservists to employees of Wooding's. The only mention of anything related to killing anyone and was a belief shared even with Rob Wooding's that the then President should have been shot for treason base on the Senate Hearings broadcast on C-Span. (sentiments not shared with Bowman)

The issue concerning weapons training is another mischaraterization
of actual events. Most of the employee's at Wooding's would joke with
Mark about coming shooting with them so he could hold the target. Bowman
also continually prodded plaintiff for ways to protect a firearm if
it had to be hid in the water. He was continually asking (this after
being questioned concerning the auction) about what grease would work
best to keep metal from rusting. Plaintiff had no need to bury weapons
on his property having a $2,000.00 gun safe to store them in. To believe
under the circumstances this statement is true would be absurd.

Mr. Jackman owned a brand new M-16 bolt would never use used
parts such as this in any gun repair as claimed by Bowman while owning
a complete AR-15 (civilian variant of M-16) would nix any sincere belief
that Bowman's claims were true. The issue of building a bracket the
fall of 1999 to secure his gun safe is impossible due to the fact Mr.
Jackman was not employed at Wooding's the fall of 1999. Plaintiff also
owned complete body armor and his hobby of testing ammo and its effects
on metal plates is of no consequence. With the AR-15 Clearly not having
a collapsible stock what does this say about the truth of any of Bowman's
"claims"?

What obsevations on pg. 10 ¶1 were made or could have been that
verified patently false allegations? Any corroboration of Bowman's aka
(CS) statements by National Guardsmen, being police or other wise is
nothing more then hearsay. Especially prone to attack for its cred-
ibility in light of the fact the statements were made after Bowman
had been caught and he was desperately looking for a way out of his
very serious trouble. When was there ever any opportunity for Plaintiff
to challenge this false information in any litigation?

On page 11 ¶1 the spin now appears concerning the traffic stop
and the warrant issued on an appealed citation that it was done as
a whim. Prior documentation and news paper articles now in Plaintiff's
possession show the Pennsylvania State Police being part of a joint
terrorism task force. If this was not true then Pa. Crim. Code 18
Sections 74 & 75 (this is from memory) requires the person that the
warrant is issued for to be informed. The contention the state warrant
wasn't issued as an unjustifiable means to stop Plaintiff is also
absurd.

It is also absurd to belive that the box of bullets fell out
of the glove box of a 1993 Cutlass Supreme. This quite frankly due
to the design where the box its self drops vertically with the lid
lifting upward makes it a physical impossibility for something to
just fall out. It should also be noted in ¶2 on page 11 that Mr. Jackman
was not only pulled over he was also pulled out of his car. It would
be challenged that being no search warrant was ever shown to or given
a copy to Mr. Jackman during the search that probable cause never
existed (due to no crimes being committed) until after statements
were coerced by the painful handcuffing concerning guns being in the
house, the dogs, and Ms. McMillen being at work. After this point in time Mr.
Jackman had been taken to the Magistrate who dismissed the bogus war-
rant. If the warrant was not bogus why then was the appeal to the
Court of Common Pleas later ruled on not in my presence?

The handcuffing issue and it's ramifications and the statements
by agents that the lawyer was requested and the painfull position
did not occur would be made by seasoned agents who knew to tell the
truth would mean the end of their case. I may only be one voice, but

a voice of truth. The question still unanswered and remaining, concerns the valididty of the search warrant. It is highly possible the statement that no evidence Id at pg.11 ¶2 was used at trial concerning the stop is incorrect. The question was there any guns in the house being asked of the plaintiff, it would appear that doubt existed as to their presence. This being true would mean evidence was gleaned during the stop that was used at trial. Probable cause being supported by the answer "yes" there were guns is such evidence. This creates a reasonable doubt and states a claim upon which relief can be granted.

There is also the fact that claims of explosives existed in the home. There is a substantive rights violation in that statement. The record as presented is clear that no determinations or identification of the devices was ever made according to Title 26 USCS §§ 5842(c) or 5845(f) or 27 CFR 179.24 with Plaintiff's request for a determination returned unable to determine without knowing the amount of the powder. If the ATF Secretary cannot determine as required by statute how can a case agent? This is a claim clearly showing that actual innocence exists. (no actual proof of guilt)

**4.     State Arrest Warrant Issued by District Justice.** The claim made that Mr. Jackman was present when District Justice Haggerty found him guilty is also blatantly false. The statement that Mr. Jackman was stopped on May 1, 1998, is also blatantly false. Mr Jackman stopped at the office and was told by DJ Haggerty that Attorney Coster was hung up in traffic, she would reschedule and send notice while telling Plaintiff he could leave. No notice of impending warrant was ever received by Mr. Jackman. The fact that Mr. Jackman was driving on

court order issued by Judge Hancher out of the Butler County Court-
house appears to be of no consequence, or the fact the alleged harass-
ment was actually as previously stated attempts to stop Plaintiff's then
step-father from removing property in violation of court order. Due
to the step father and DJ Haggerty being personal friends was the
only reason there was guilt. The driving portion was dropped more
so due to keeping off the record the fact the citations were issued
due to a request by Plaintiff's step-father in an attempt to allow
him to continue his thefts by keeping Plaintiff out of the way.

And again the district court (Judge Cohill) on pg.13 ¶4 insists
the Notice of Impending Warrant was issued, one was prior to this
situation except not concerning the warrant used to initiate the federal
search. The Federal Investigator (Kevin) from the Federal Public Defend-
ers office retrieved deleted information from Haggerty's office, an
attempt to alter the computer files. The issue of the payment schedule
was heard by the Court of Common Pleas out of Plaintiff's presence
which appears to be the norm in Pennsylvania.


5.    **Post-Arrest,Pre-Trial and Trial.** True a dention hearing was
held with no opportunity by Mr. Jackman to refute the unsubstantiated
claims of Plaintiff being a danger to the community. This denial to
present evidence that the claims made by the USA's Office were based
on extrinsic fraud. In the present case it has allowed the unsubstan-
tiated statements by CS (Mark Bowman) to be entered into the record
and no opportunity to present evidence to refute the "stories". Stories
which have presented the case as being one of Plaintiff attempting
to acquire items from the National Guard, targeting aircraft with
laser aiming devices attached to weapons, making illegal firearm pur-

chases, drug dealer stock piling bombs, threatening to shoot the President and Madalin Albright, and building destructive devices. The actualities (facts) being That Mark Bowman was caught committing actual crimes against the United States and from that point on at work kept asking about how to pack guns in grease, trying to elicit help to steal during training exercises, and creating the allusion it was Mr. Jackman who was asking Bowman to do these things, when Bowman had stolen items from his fellow reservists and sold it to most every one working at woodings.

The using of the laser pointer and infrared illuminator on the surveillance aircraft after seeing infrared illumination emitting from the plane with the use of Plaintiff's Night Vision was done in an attempt to identify an aircraft which was conducting an illegal search using Sense Enhancing Technology in violation of the 4th Amendment of the United States Constitution and the Ruling in the United States Supreme Court case of <u>Kyllo v. United States</u>,150 L.Ed.2d 94 (2001). Evidence which may have been used to determin that Mr. Jackman possessed firearms. The actuality of the circumtances being far from what was portrayed by the USA's office.

The issue of being a felon in possession and illegally purchasing firearms is also overshadowed by the fact the same government which approved four years worth of firearm purchases when rights were restored, then turns around and prosecutes for the same approved conduct says little for the integrity of the Department of Justice. The cover-up of this fact continues in the withholding of the firearm purchase records in violation of The National Instant Background Check System Title 18 USCS § (i)(1) concerning firearm purchase records maintained

by any (i) ...department, agency, officer, or employee of the United
States may-(1) require that any record or portion thereof generated
by the system established under this section be recorded at or trans-
ferred to a facility owned, managed, or controlled by the United States
..., the withholding of said purchase records also in violation of
Brady v. Maryland, 373 US 83 (1963). The continuing to withhold nearly
(7) years later a clear indication that some sort of cover-up by the
U.S. Attorney's Office continues as it relates to this exculpatory
evidence.

As to being a drug dealer stockpiling bombs, where are the drugs,
and where are the statutorily required determinations that empty $CO_2$
pellet pistol cylinders and over the counter pest control reports are
bombs?

Concerning the unsubstantiated statement by "Bowman" that Mr.
Jackman was going to shoot the President and Madelin Albright is as
untrue as it gets. The fact of his being caught at actual federal crimes
and was telling stories to get out of trouble and truthfulness has
been questioned, would require the district court to conduct a needed
**Franks** hearing. Franks v. Delaware, 57 L.Ed.2d 667 (1978) which the
record clearly shows did not occur.

The portion concerning the competency examination filed by court
appointed counsel Marketa Sims was the result of her and her then boss
Kelly Stark attempting to persuade Mr. Jackman to take a plea for $7\frac{1}{2}$
to $9\frac{1}{2}$ years. This after acquiring the restoration of rights documenta-
tion and refusing to get the purchase records from AUSA Picking. The
response being that she would not give them to us. That win, loose,
or draw it was the intent to present this to the jury and let them
decide if Plaintiff was in violation of the law or not.

There never was any conversation between Jackman and Sims concerning competency, Sims did this on her own. With Mr. Jackman knowing his rights had been restored and purchases had been repeatedly approved, what other than innocent conduct occurred? With the U.S. Supreme Court holding in both Afroyim v. Rusk, 18 L.Ed.2d 757 (1967) and Vance v. Terrazas, 62 L.ED.2d 461 (1980) That it was beyond Congress' Power to take "Citizenship", and innocent conduct not in violation of the law according to Lambert v. California, 2 L.Ed.2d 228 (1957), why would anyone in their right mind want to take a plea when their conduct was "government approved"? The felon in possession charge according to **Afroyim & Rusk** could not be imposed unless Plaintiff gave up his citizenship (18 USCS § 922(g)(7)) which he did not, and with the U.S. Constitution protecting citizens who engage in commerce, how could any crime have been committed?

There was evidence presented (determination requested by Plaintiff to ATF) which showed by statute the device charged was not destructive. There was requests made to Attorney Grail to do the same which was never done (the same with many issues the copies of the letters comprising about a four inch thick stack), with a knowing or should have known that the statute required a determination. This is a substantive issue, and a clear showing of ineffective assistance of counsel (IAOC). The destroying of the device done being the case agents knew it would not stand muster under a proper determination. Regardless of what the district court determined in relation to the device, neither being designed or redesigned as a weapon the "fact" still remains that the Statutes supra require a determination, not a trial where the AUSA can scream to the jury in her rebutal that Mr.Jackman was Making hand-

(13)

grenades and killing people in order to illicit a guilty verdict after
instructions the case was not made. This miscarriage of justice act
witnessed by Attorney Grail, Judge Cohill, everyone in the courtroom,
Mr.Jackman, and the jury has never been addressed. Someone has gone
to lengths to insure its removal from the trial transcripts. This has
occurred with other information Mr. Jackman has either questioned or
made for the record. Any claim that this case has been adjudicated
upon the facts is preposterous, the record used is lacking many case
ending issues, questions about government misconduct, or other relevant
issues which have rendered Mr. Jackman's trial and imprisonment a trav-
esty of justice with actions done in an arbitrary and capricious manner.

The previous issues addressed an indication of an in part list
of the issues. The taking of the plea on the felon in possession charge
was due to the tainted jury which was stated at the plea and was altered
on the transcripts. The many portions that were altered or omitted
do not read with any consistency or just don't make any sense. One
does not forget asking who put the parts in the MAC-90 rifle which
made it fire full auto when the inventory listed the parts, one does
not forget a person screaming to the jury that he was making handgren-
ades and killing people especially when she sounded like a chihuahua
with her high pitched voice.

In relation to the change of plea page 16 ¶3, and concerning the
miscarriage of justice act committed by the AUSA what fair trial could
have transpired with a jury so tainted as to belief Mr. Jackman was
killing people? He was not charged with this nor had he committed
any crimes with the use or intended use of a firearm. If it is to
be said the letter was such an intent then why did it take six years

to show concern by the USA's Office? When Attorney Grail was verbally compelled to respond to the AUSA's acts his response was he could not do anything about it, with my outcry treated by the Judge with shut up and sit down, Marshals if Mr.Jackman makes anymore outbursts restrain him.

Is it to be believed these acts comprise the goings on of a fair and just trial? The fact that much of this information was removed from the transcripts establishes criminal acts by actors of the court and Department of Justice.(forgoing as individual responses to O&O findings)

**6.    Discussion, A.Dismissal of Claims Already Litigated.** True the issue of the State warrant was litigated except not based on the actual facts. Previously in the Opinion and Order pg.13 the issue of the State warrant was addressed except that all the facts were not included in the determination. It has continually been inferred that Mr. Jackman was repeatedly pulled over and ticketed when this is totally false. No of the tickets presented in the file had Mr. Jackman's signature on them due to their being received in the mail.

The issue of the altered District Justice Files has not been properly addressed and if addressed with all the actual facts such as Mr. Jackman not being present at the first hearing where he was found guilty with out any Constitutionally required right to be present and submit evidence in his defense, the district court would have to addressed the validity of this conviction. This alone would require a different finding based on the facts. Second there was no harassment only a citizen attempting to inforce a court order which the local police would not. Where is this fact included anywhere?

Mr. Jackman is not attempting to relitigate the matters concerning the district justice in the context of their original findings. This would serve no purpose i.e. it would only be a rehashing of the skewed evidence. The problem in this matter is a record that contains false information and no means to correct in part the statements that tickets were issued during traffic stops that never occurred, hearings that Plaintiff was not present, and issues concerning the computer files being altered that were not given their evidentiary value as it relates to the truthfulness of anything occurring in Haggerty's office. It is next to impossible,(concerning the fact that the federal agents had my family believing I was some kind of a domestic terrorist for nothing more than collecting guns, while having my then girl friend believing I was running around on her, and other witnesses being arrested with the outcome of said arrest being "dependent uopn", this is taken to mean their cooperation,)to get anyone willing to testify.

With the attorney refusing to issue subpoenas to witnesses who could refute government allegations, the response that witnesses would not testify becomes moot. There is other evidence relating to the search warrant concerning the aircraft search with sense enhancing technology which could have been used to get probable cause to search. Since firearms were found any of the prior statements by agents would have sounded credible. The "fact" Mr. Jackman was never shown a copy of the search warrant, was painfully handcuffed to secure signing of the waiver of rights, and to gain access to the safe one can with reasonable probability deduce that it was very likely probable cause did not exist to secure a valid search warrant. It could also be that the aircraft search produced evidence used for the warrant. The 3rd Circuit in Kopec v. Tate addressed the painful hand cuffing issue.

(16)

It would appear based on all the inconsistencies stated in the §2255 and in this Rule 60 Motion the district court would have at least held a **Franks** supra hearing. This would have been of particular interest relating to how the speedy trial issue was addressed. The court in its opinion referenced from the docket which contained entries which made it appear several continuances were on Mr. Jackman making them excludible delay. Further examination of the actual orders reveals the orders were not attributable to Mr. Jackman, but to the government. True this speedy trial was addressed on appeal with the failure of Attorney Grail to supply relevant copies of orders and the time-line which conclusively shown there was no less than 247 days that were not excludible. The district court not addressing this issue and citing Supreme Court case law related to previous state convictions and Habeas under §2255 which is not applicable here. See <u>Withrow v. Williams</u>, 507 U.S. 680, 720-721, 123 L.Ed.2d 407 (1993) as cited on pg.18 ¶2 of the opinion order.

The applicable Supreme Court Ruling would be found in <u>Bousley v. United States</u>, 523 US 614, 140 L.Ed.2d 828 (1998). It has been shown that cause exists as well as prejudice. To adjudicate a matter based on incorrect evidence will be a showing of cause, with the prejudice suffered by the adverse ruling not based on the actual events. The list of issues claimed to be procedurally barred on pg.18 starts with an issue that is substantive i.e. no less than three seperate sections or statutes supra, require a determination by the Secretary of the BATF&E. #2 deals with exculpatory evidence of the device, and #3 about statements about the device, both procedural issues, #4 dealt with sentencing just to preserve the issue with the 3rd Circuit relying

on ..."objective evidence before the jury indicated that the device was a weapon".... The problem being with this statement by the 3rd. Circuit is that it was congress' intent for such determinations to be made by the Secretary or his delegate of the BATF&E. With Title 26 USCS §§ 5842(c) & 5845(f) & 27 CFR 179.24 it is clear what the intent of congress was and it was not to have laymen, untrained, making technical decisions which may cause unjust imprisonment. It also was to keep case agents and others associated with cases making determinations necessary to keep their jobs or justify prosecutions.

The substantiveness of this speaks for its self. It is not under stood where intent comes from when the statutes are clear on this issue. With the AUSA submitting then withholding the determination which showed conclusively the devices not to be destructive and Attorney Grail doing the same, procedural issues also come into play as it relates to counsel and exculpatory evidence.


7.    **Cause and Prejudice.** Cause can be established by plaintiff, with cause being:

> Definition from Ballentine's Law Dictionary, Third Edition:
> **cause.** An action or suit. 1 Am J2d Actions §4; including a
> criminal prosecution. Anno: 20 ALR 606; a cause of action;
> a consideration; motive; origin; that which produces or ef-
> fects results, even though not intended. United States v.
> Weisman, (CA2 NY) 83 F.2d. 470,107 ALR 293; that from which
> anything proceeds, and without which it would not exist;
> that which supplies motive; that which decides action or
> constitutes the reason why anything is done.

Plaintiff can establish "cause" in order to satisfy the prong in **Bousley** supra that cause and prejudice must exist. The cause deciding the motion based on incorrect information, incorrect evidence, and where it is

(18)

mandated by statute to be done in a specific manner and not decided
by a untrained jury.

    The "prejudice" suffered is obvious, imprisonment, loss of life,
loss of property, public ridicule, emotional stress, and any number
of reasons resulting from incarceration. The claim made that Mr. Jackman
is actually innocence is with merit. To prove "actual innocence" (which
legal innocence is also established) petitioner must demonstrate that
'"in light of all the evidence"''it is more likely than not that no
reasonable juror would have convicted him."'Bousley, 523 U.S. at 623
(quoting Schlup v. Delo,513 U.S.298,327-328 (1995)).

    Though responded to later in the Opinion and Order the matter
will now be addressed where raised on pg.21 ¶ 3 due to its effect on
the rest of the answers throughout the Opinion order. In Grady v.
Corbin,495 U.S.508,109 L.Ed.2d 548, 110 S.Ct.2084 (1990) decided the
issue of previous charges being used to establish an essential element
of an offense charged. In the opinion of the U.S. Supreme Court in
**Grady** concerning Double Jeopardy, held as follows:

> We hold that the Double Jeopardy Clause bars a subsequent
> prosecution if, to establish an essential element of an
> offense charged in that prosecution, the government will
> prove conduct that constitutes an offense for which the
> defendant has already been prosecuted.² Id at [495 US 510]
> [1a,2a,3a]

The issue of actual innocence takes on new meaning in light of **Grady**
i.e. it establishes that actual innocence would exist being Plaintiff's
present conduct (firearm possession) was made criminal due to prior
conduct already prosecuted and convicted of (prior drug charge). It
cannot be said this is not the circumstance of the present case. A
situation made worse by the fact the conduct engaged in was Consti-
tutionally protected. There is further U.S. Supreme Court precident

as it relates to what core rights are, the right to vote, right to
bear arms, sit on a jury, and hold office. (cite omitted) There is
also the Supreme Court precedent as it relates to the power of Con-
gress to take away a persons rights of citizenship. With core rights
being core rights one has as much standing of importance as the others.
In Afroyim v. Rusk,387 US 253,18 L.Ed.2d.757,87 S.Ct.1660 the court
held:

> Citizenship in this Nation is a part of a cooperative affair.
> Its citizenry is the country and the country is its citizenry.
> The very nature of our free government makes it completely
> incongruous to have a rule of law under which a group of cit-
> izens temporarily in office can deprive another group of cit-
> izens of their citizenship. We hold that the Fourteenth Amend-
> ment was designed to, and does, protect every citizen of this
> Nation against a forcible destruction of his citizenship, what-
> ever his creed, color, or race. Our holding does no more than
> to give to this citizen that which is his own, a constitutional
> right to remain a citizen in a free country unless he volun-
> tarily relinquishes that citizenship. Id at *[387 US 268]
>
> color; definition per Ballentin's Law Dictionary Third Edition:
> Mere semblance of a legal right.

In the U.S. Supreme Court case of Vance v. Terrazas,444 US 252,62
L.Ed.2d.461, 100 S.Ct.540 the court held as it relates to acts of
expatriation as follows:

> In sum, we hold that in proving expatriation, an expatriating
> act and an intent to relinquish citizenship must be proved by
> a preponderance of the evidence. We also hold that when one
> of the statutory expatriating acts is proved, it is consti-
> tutional to presume it to have been a voluntary act untill and
> unless proved otherwise by the actor. If he succeeds, there
> can be no expatriation. If he fails, the question remains
> whether on all the evidence the Government has satisfied its
> burden of proof that the expatriating act was performed with
> the necessary intent to relinquish citizenship. at [444 US 270]V

It cannot be said that the felon in possession charge does not have
an element of citizenship in the charge. In 18 USCS § 921(a)(20)
the issue of restoration of citizenship is specifically addressed.

In 18 USCS § 922(g)(5) reference is made to title 8 USCS §1101(a)(26) with §922(g)(7) specifically addressing expatriation being one of many references establishing the required Nexis between the two statutes. Of further importance is the reference to 8 USCS § 1481(b) which reads as follows:

> **(b)** When the loss of United States nationality is put in issue in any action or proceeding commenced on or after September 26, 1961, under, or by virtue of, the provisions of this chapter or any other Act, the burden shall be upon the person or party claiming that such loss occurred, to establish by a preponderance of the evidence. Any person who commits or performs, or who has committed or performed, any act of expatriation under the provisions of this chapter or any other Act shall presumed to have done so voluntarily, but such presumption may be rebutted upon a showing, by a preponderance of the evidence, that the act or acts committed or performed were not done voluntarily.

With the district court addressing the Restoration of Rights by the State of North Carolina it has acknowledged the issue of rights as it relates to the felon in possession charge. Despite what the district court believes there is a statutory requirement to establish the loss of citizenship in 8 USCS § 1481(b) creating a substantive right and the violation thereof, by the failure of the district to address this issue. It would appear that the district court has become used to having it their way regardless of what the law requires. This in part establishes prejudice by showing favoritism towards the government which in turn has resulted in an incorrect determination by the district court. There is further issue as it relates to citizenship when taken into consideration the "fact" that it is beyond the power of congress to take citizenship without the persons accent. Accent that was NOT given by Mr. Jackman or allowed by the holdings in **Afroyim** and **Vance** supra which have not been superceded.

Based in part on the foregoing and that Title 18 USCS § 4001(a) puts limits on detention Plaintiff would be entitled to declaratory relief under this statute which reads in relevant part as follows:

> **§ 4001. Limitation on detention; control of prisons** (a) No citizen shall be imprisoned or otherwise detained by the United States except pursuant to an Act of Congress.

In the case of Title 18 it was enacted after an adjournment sine die which would render the enactment void. See <u>Blanchette,et al. v. United States</u>, 419 U.S. 102;95 S.Ct.335;42 L.Ed.2d 320(1974) for the continuity of congress being broken by sine di adjournment.

The district court is also prejudicing Plaintiff by not fully addressing all his claims raised. By the district court picking and choosing those issue most likely to gain them a win (another showing of impartiality), they are denying Plaintiff the ability to appeal. The denial being due to the appellate court not having jurisdiction to hear the appeal. Fed.R.Civ.P. Rule 54(b). This rule 60(b) also being a form of a motion for reconcideration.

Fed.R.Civ.P. Rule 52(a) requires the district court to make specific findings of law and fact on the claims presented. As can be seen by the Opinion Order only the most favorable to the government have been addressed. The showing of being nonpartial is further bolstered by the fact the district court judge is now being represented by the US Attorney's office and has made this adverse ruling in what appears to be an attempt to sabotage the civil action filed under case no. 05-cv-00215 i.e. the defendants (including defendant Judge Cohill) can now benefit from his ruling denying the §2255. With the majority of the claims raised not specifically answered these matters cannot be addressed by the court of appeals resulting in further sbstantive

procedural, and rule violations showing further cause, prejudice and proof of actual innocence. Plaintiff requires the district court to make specific findings of law and fact, and when the facts put forth are in conflict with Plaintiff's a hearing is requested so either testimony, evidence, audio, or other documentation can be submitted to refute what has fraudulently been presented, and can only be described as extrinsic fraud committed by the prosecution. Based on the foregoing there is a question of citizenship which has not been properly addressed. There has been a taking of citizenship without accent, there has been a restoration of rights "certified" that all rights forfeited upon conviction are by law automatically restored with nothing in the certified portion to indicate any conditions, including the certificates title "Certificate of Unconditional Discharge". The fact being no separate proceeding was ever held which took away the right, creating a restoration based on fraud.

The taking away of citizenship when not authorized by Congress, has resulted in confinement based on the exercising of a Constitutionally protected act. The commerce issue being another infringement on the right to engage in commerce which is being violated by inferring the purchases of firearms made in another state somehow confers a right upon congress to deny engaging in commerce.

**8. Ineffective Assistance of Counsel.** The belief that Attorney Grail or Sims were either effective in there representation is a fallacy. Plaintiff who is supposed to control the lawyer and direct his conduct inorder to exercise his rights thru the lawer, simply means the right cannot be exercised thru the lawyer if he is not doing as requested.

(23)

Since being prosecuted and represented by the Reed-Smith law firm in Pittsburgh, Pa, a partner (Hardiman) of Efrem Grail has been appointed to the federal bench, a local State Court judge was cleared of charges while another judge was released from prison early. Most recently another win concerning officials represented by Reed-Smith pertains to the recent theatre acquired by eminent domain by the city, brings into question where Reed-Smith stands as it relates to representation loyaly? With Attorney Grail possessing exonerating evidence and not using it due to the effect it would have upon the governments case (it would have ended it), his effectiveness truely comes into question.

This matter of who they are loyal to and when they are loyal can be seen during the competency proceedings where they did not miss a trick. Then during trial their performance could best be described as the clown version, not willing to do what was necessary to defete the government's case, (subpoena witnesses, present documentary evidence, [Purchase records, determinations, evidence of witness tampering by AUSA ect.] depose government witnesses, and Plaintiffs accuser).

With all the letters with the intent of what Plaintiff wanted done, the motions filed which were only forwarded to Attorney Grail, letters sent to the Judge, and other correspondence sent it cannot be said that plaintiff was not trying to exercise his Constitutional Rights and what he wanted the attorney to do. The district court has stated in the O&O pg.18 ¶3 that the claims are procedurally barred for not raising them on appeal. When the attorney was instructed to do so and did not and when Plaintiff's attempts were forwarded to the same attorney not doing as asked, it is not for lack of due diligence on the part of the Plaintiff that the issues were not raised on appeal.

With the statutes under Title 26 and 27 CFR supra requiring the destructive device determination and the determinations finding that the devices not destructive, while it was the intent of Congress to have this performed by those properly trained, Plaintiff has made a showing that more than a reasonable probability existed that in light of the exonerating evidence (if presented by Attorney Grail) the case would have turned out differently. Instead Plaintiff suffered another of a long string of substantive rights violations due in part to Attorney Grail not searching the record or knowing when he should have known the statutory provisions and their requirements.

This deficient performance has prejudiced Plaintiff, it is clear that if the determinations by the BATF&E were presented the outcome would have been different. It can also be established by this substantive violation that the AUSA vindictively prosecuted plaintiff when possessing exculpatory evidence which established that NO violation of Title 26 USCS was committed by Plaintiff. This further bolstering the claim of where loyalties lied while fulfilling the requirements of McAleese v. Mazurkeiqicz, 1 F.3d 159, 166 (3rd Cir.1993);Stickland v. Washington, 466 U.S. 668,(1984). Attorney Grail had possession of said evidence which was contained in the case file materials dent from his office.

The fact that Attorney Grail just sat there when the miscarriage of justice acts were committed by AUSA Picking concerning Plaintiff killing and making handgrenades which being not addressed on appeal further establishes Plaintiff's IAOC claim.

Again in the O&O the judge goes on the claim of the recorded evidence. Herein lies the reason for the audio tapes to make a showing that the record as referenced by the district court is making any find-

ings based on said record erroneous.(Id O&O pg.23 ¶3) Of course it could be said the evidence is not before the court. The district court has made every attempt to insure its not being brought forward before this court or any court.

The one fact remains that stenographers use a cassette tape as an audio back-up to insure transcript correctness. The stenographer numerous times paused proceedings to change tapes. Judge Cohill is expecting one to believe that no tape[s] exist despite his many years of sitting at trials on the federal bench. It would appear he is hiding something to not grant a motion for tapes which would clear up this matter once and for all. But due to the tapes showing criminal conduct by officers of the court which went unchecked in Judge Cohill's court room relating to in part to false arrest and imprisonment, withholding of exculpatory evidence, failing to review FOIA requests, and denying discovery, it is clear there is something he does not want exposed.

This is why the record continues to partially give rise to questions of Plaintiff's claims and their validity. They are by no means frivolous and with Plaintiff spending almost (3) years in jail something foul was a foot.

The district court in its O&O on page 21 ¶1 cites the 3rd.Circuit case of Wise v. Fulcomer,958 F.2d 30,34 n.9 (1992) as it relates to "some external impediment". This requirement has been previously answered as it relates to the IAOC claim. As previously stated in this Rule 60(b) motion the issues not raised were due to an attorney from a law firm with a long history of assisting the judiciary and DOJ on cases when personal needs overshadow the upholding of the letter of

the law. His acts in conjunction with the AUSA (interference by off-
icials) which lead to the withholding of evidence as well a witness
tampering. An in part list of "external impediments"are as follows:

1.    The U.S. attorney's Office withholding many **Brady** documents which
comprise exculpatory evidence, the firearm purchase records, the BATF&E
destructive device determinations, the evidence gleaned from approxi-
mately (9) periods of aircraft search with sense enhancing technology
for periods of at least (8) hours at a time covering many weeks gleaning
information possibly used for securing the search warrant in violation
of the 4th Amendment, arresting and threatening with prosecution defense
witnesses if they testify, refusing to bring forth Plaintiff's accuser
as required by the 6th Amendment of the United States Constitution,
committing miscarriage of justice acts to secure a conviction in viola-
tion of the Constitution, failing to show an actual loss of citizenship
as required by 8 USCS § 1481(b), committing misprison of felony for
not prosecuting Mark Bowman (CS) while giving him aid and comfort while
keeping this fact from before the district court, for failing to address
the 18 USCS § 922(s)(1)(A) statutory requirement to inform Plaintiff
that his purchases would have put him in violation of the law, filing
for forfeiture of Plaintiff's property under an inapplicable statute
under 21 USCS § 881 and withholding this fact from the court, and who
knows how many other could be listed with more time to specifically
go over all issues.


2.    The district court continues to infer that Plaintiff was not
denied IAOC, this is patently false. The issues listed above as it
relates to Plaintiff's then Attorney were all issues brought to the
attention of Plaintiff's Attorney on many instances. The record as

it exists is void of any instances where Attorney Grail questioned or objected to the greater percentage of the issues raised. Considering the Reed-Smith law firms track record for winning cases for the government what else needs said.

When looking at the case by the standpoint of the government, they could not allow the case of the firearms go before a jury that would acquit, question, or possibly nullify the §922(g) statute. The firearm possession case should have been heard first, except this would forestal the closing argument tactic to sway the jury. This issue the district court continues to not address while it had a profound effect on the jury to the point of denying a fair trial.

There is also a continued effort by both the district court and the U.S. Attorney's office to just ignore statutes which do not fit the needs of either. In the O&O on page 26 ¶4 Judge Cohill skirts around the statute issue by calling it a "'creative' legal argument" as it relates to Title 8 and the enacting clause in Title 1 section 101. In light of the fact that Title 18 was enacted after a sine die adjournment and is void according to Article I. Section 5, Clause 4 of the Constitution which requires that "Neither House, during the session of Congress, shall, without the Consent of the other, adjourn for **more than three days,** nor to any other Place than that in which the two Houses shall be sitting," the district court is wrong in its assessment.

Article I, Section 7 Clause 2 requires every bill to have **passed both** Houses of Congress and be presented to the President before it can become law. Thus, **a bill must pass both houses of Congress** to be valid. Article I,§7,Clause 2, U.S. Constitution: <u>Field v. Clark</u>, 143 U.S. 649, 36 L.Ed. 294, 12 S.Ct 495 (1892); <u>National Bank of Oregon v. Insurance Agents</u>, 508 U.S.439,455,124 L.Ed.2d 402, 418 n.7,113 S.Ct.

2173 (1993).

Penal laws are to be construed strictly because legislators, not courts, define crimes and establish punishments. <u>Yates v. United States</u>, 354 U.S. 298, 304, 775 S.Ct. 1064, 1 L.Ed 2d 1356 (1957), over-ruled on other grounds, <u>Burks v. United States</u>, 437 U.S.1,98 S.Ct. 2141, 57 L.Ed.2d 1 (1978). For the sake of argument in light of the fact Title 18 is void there is still the fact that there is a Nexus between Titles 8 & 18 which was clearly presented to the district court and as usual was ignored.

The law is well established that to sustain a crime, the statute alleged to have been violated must have been **duly enacted** by the legislature. [hence why Title 18 USCS 922(g) contains no enacting clause] One need only pick up the U.S. Code Service and look at Title 18 for the firearms section to see the enacting clause is missing. See <u>Hotch v. United States</u>, 212 F.2d 283,284 (9th Cir. 1954)("a law which has not been duly enacted is **not a law,** and therefore a person who does not comply with its provisions cannot be guilty of any crime. An act repugnant to the Constitution is **void.** (The present case being it took a Constitutionally protected act and made it criminal) <u>Cooper v. Telfair</u>,4 Dal 14,1L.Ed.721(1900);<u>Marbury v. Madison</u>, 5 U.S. 137. The Constitution must prevail where the inconsistency with a statute is clear. <u>Powell v. Pennsylvania</u>, 127 U.S. 678, 33 L.Ed.253, 8 S.Ct. 992 (1888); <u>Brimmer v. Rebman</u>,138 U.S. 78,11 S.Ct. 213, 3 L.Ed.862 (1891)(A statute that violates the Federal Constitution is **void** regardless of the purpose of its recitals;<u>Cooper v. Telfair</u> 4 U.S. 14, 1 L.Ed. 721 (1800). **Longevity does not insure that a statute is constitutional.** <u>Brennan v. U.S. Postal Service</u>, 439 U.S. 1345, 58 L.ED. 2d 51, 98 S.Ct. 22 (1978) Per Marshall, J. as circuit justice, "The question is not

how long the parties assumed a certain state of law. but whether that state of law is merely an assumption. **The passage of time, the acquiescence of the parties, the assumptions of officials, even all taken together cannot enact a statute.** Legislation only comes into existence through **bicameral** congressional enactment and presentment to the President of the United States. <u>Independent Insurance Agents of America Inc. v. Clark</u>,965 F.2d 1077 (1992) Id at pg.1078 ¶8; U.S. Constitution Article I § 1 and 7, cl. 2 & 3; <u>INS v. Chadha</u>, 462 U.S. 919,946, 103 S. Ct.2764,2781,77 L.Ed.2d 317 (1983).

Normal Congressional procedures require that any legislation that is terminated **sine die** in the first session of Congress to be **reintroduced** as new legislation under a new number in the next session. See,e.g.,HR 4233, which died sine die in the first session of the 79th Congress, and its reintroduction as HR 6723 in the second session of the 79th Congress. **Adjournment sine die means final adjournment for the session.** See Black's Law Dictionary 1385(6th Ed.1990)." <u>Vanderbilt v. Babbit</u>, 113 F.3d 1061, 1068 FN (9th Cir.1997).

> Imprisonment under a void order is without authority of law and one so imprisoned will be discharged on habeas corpus. <u>In re Ayers</u>, 123 U.S. 443,31 L.Ed 216,8 S.Ct. 164 (1887); <u>Fay v. Noia</u>, 372 U.S. 414,423, 9 L.ED.2d 837, 83 S.Ct. 822 (1963); <u>Ex Parte Seibold</u>, 100 U.S. 371,25 L.Ed.717 (1879). "[T]he rule, springing from the nature and limits of the jurisdictional power of the United States is **inflexible and without exception**, which requires the court of its **own motion**, to deny its jurisdiction, and in the exercise of its appellate power, that all other courts of the United States in all cases where such jurisdiction does not affirmatively appear on the record." <u>Mansfield, C&L.M.Ry. v. Swan</u>, 111 U.S. 379, 382, 28 L.Ed. 462,4 S.Ct. 510 (1884).

As to the statutes pursuant to which Petitioner was indicted, convicted, and sentenced were never enacted into positive law, are unconstitutional on their face, and are null and void ab inito, Peti-

tioner's indictment and conviction are null and void and the court
has a duty to issue an order for his release.

The contention by Judge Cohill that Mr. Jackman's legal arguments
were creative, may be true. The contention they "are in the eyes of
the law absurd on their face" is simply untrue in light of the fore-
going case law, unless the rulings by the U.S. Supreme Court are also
considered absurd by Judge Cohill. This same issue was addressed by
Attorney General Janet Reno in a Memorandum dated November 12, 1996,
on page 1. concerning 6 Op. O.L.C. 744 (1982).

Based on the fact Judge Cohill is a defendant in a civil action
based on the same conduct and issues presented in the §2255, that the
same petition was motioned to be transferred to the Federal Court of
Claims, the transfer motion being denied and the matter to be trans-
ferred ruled upon prior to any opportunity to appeal, and that due
to the fact the district court lacked jurisdiction to rule on the
§2255, any order issued relating to the motion would its self be null
and void requiring the court to grant this motion under Rule 60(b).


**9.    Collateral Claims Challenging Count I.** Again the district court
refers to the original record and that the issue challenging the plea
should have been raised on appeal. This is another showing of the ex-
pertise of the Reed-Smith law firm as it relates to insuring relevant
issues not in the favor of the government are left by the wayside to
insure their not coming back to haunt them in later proceedings. It
is also another showing of issues Petitioner requested Attorney Grail
to pursue with his attempts at doing same returned or forwarded to
Attorney Grail, who, as the record clearly shows failed to act upon
the issue.

For the record it is to be understood that the guilty plea was
only taken due to the AUSA Picking tainting the jury, while the district
court refused to impanel another jury denying Mr. Jackman any chance
of a fair and just trial with people sitting on a jury now believing
others were killed. What is voluntary about a plea based on that
circumstance? That is the reason it was attempted to be withdrawn.

The statements on pages 27 & 28 related to unspecified statements,
prejudicial statements by the prosecutor, and unspecified prosecutorial
misconduct are all issues that were specifically addressed and would
be unequivocally substantiated by the audio tapes of the proceedings.
These statements are not vague or conclusory. This would be further
be supported by the withheld destructive device determinations also
withheld by the U.S. Attorney's Office which would further state a
claim of factual and actual innocence. Without any hearing conducted
which would bring forth this evidence prejudice has been established
by Petitioner.

The issue of not fully addressing the rights of citizenship issue
by the district court has resulted in the denial of appeal due to a
lack of jurisdiction. The U.S. Supreme Court rulings in **Vance & Afroyim**
supra which specifically addressed the issue of core rights, to vote
hold office, sit on jury and bearing arms are all rights which Con-
gress does not have the power to take. Where are the specific findings
of law and fact related to this argument as required by Fed.R.Civ.P.
Rules 52(a) & 54(b). 52(a) requires specific findings,& 54(b) forbades
appeal on issues where findings were not made. This act by the district
court has denied Plaintiff's substantive and procedural rights to app-
eal.

This is only the tip of the iceberg as it relates to the fraud being attempted by the district court. The district court cites <u>Caron v. United States</u>,524 U.S. 308 (1998) and <u>United States v. O'Neil</u>, 180 F.3d. 115,119(4th Cir. 1999),<u>cert.denied</u>,120 S.Ct.433(2000) as its authority. There is one major flaw in this holding, that being both cases were ruled on after Mr. Jackman's restoration of rights. Plaintiff was unable to find any provisions in either case which conferred any retroactivity provision in either holding.

Even if there was any retroactivity provision it would be in violation of the ex post facto clause of the United States Constitution. This issue of retroactivity ex post facto was extensively addressed in the U.S. Supreme Court case of <u>Stogner v. California</u>, 539 U.S. 607, 156 L.Ed.2d.544 (2003). With Mr. Jackman's restoration of rights occurring January 16th, 1997, with **Caron** in 1998 and **O'Neil** in 2000 it could not be said their application is not retroactive violative of ex post facto.

Further fraud or misrepresentation can be found in the finding by the district court as it relates to the North Carolina statutes concerning the restoration certificate titled Certificate of Unconditional Discharge. It would stand to reason unconditional meant without condition. When examining N.C.G.S. 13-1 **Restoration of Citizenship.** which reads as follows:

> Any person convicted of a crime, whereby the rights of citizenship are forfeited, shall have such rights automatically restored upon the occurrence of any one of the following conditions:
> (1)    The unconditional discharge of an inmate by the State Department of Correction or the North Carolina Department of Correction, of a probationer by the State Department of Correction, or of a parolee by the Department of Correction; or of a defendant under a suspended sentence by the court.

It cannot be argued that §13-1 is in part the statute rights were re-
stored under. The second portion being under §13-2 which reads in rel-
evant part as follows:

> **§13-2. Issuance and filing of certificate or order of restoration.**
> (a) The agency, department, or court having jurisdiction over
> the inmate, probationer, parolee or defendant at the time his
> rights of citizenship are restored under the provisions of G.S.
> 13-1(1) shall immediately issue a certificate or order in dupli-
> cate evidencing the offenders unconditional discharge and **spec-
> ifying the restoration of his rights of citizenship.** (emphasis
> added)

The North Carolina Department of Correction issued the certificate
and specified that all rights forfeited on conviction are by law auto-
matically restored. The prior portion cited in the O&O pg. 32 relating
to the preclusion by **some** felons is not certified as being applicable
to Mr. Jackman as required by G.S.§13-2(a). This is a relevant issue
due to the fact the district court is implying that it specifically is
applicable to Plaintiff Jackman.

The 4th Circuit addressed this issue in <u>U.S. v. Tomlinson</u>, 67
F.3d 508 (1995) as it relates to the finding of scienter and the
reading of G.S.14-415.1(a) which in note 3 pg.511 reads as follows:

> 3.  Section 14-415.1(a) of the North Carolina General Sta-
>     tutes states in its entirerty:
>     It shall be unlawful for any person who has been con-
>     victed of any crime set out in subsection (b) of this
>     section to purchase, own, possess, or have in his cus-
>     tody, care, or control any hand gun or other firearm
>     with a barrel length of less than 18 inches or an over-
>     all length of less than 26 inches, or any weapon of
>     mass death and destruction as defined in G.S. 14-288.8
>     (c), within five years from the date of such conviction.
>     N.C.Gen.Stat. §14-415.1(a)

With conditional issues addressed in N.C.Gen.Stat. §13-4 and nothing
in the certified portion of the Unconditional Discharge Certificate,
how is it that Mr. Jackman is not under the unless clause of 18 USCS
§ 921(a)(20)? **Tomlinson** supra was law in effect at time of the res-

toration of rights. Whith such conclusive evidence how could the district
court rule in favor of the government? Answer, he is presently a defen-
dant in a related civil action represented by the U.S. Attorney's Off-
ice, where a ruling such as this would allow the defendants to use
evidence of said denial in responses to the suit. The issue of the
IAOC under Strickland v. Washington, 466 U.S. 688 (1984) takes on new
meaning in light of the recent ruling of Stewart v. Wolfenbarger, 468
F.3d 338, 356-357 (6th Cir.2006). The importance to the present case
that when the BATF&E determination requested by Mr. Jackman was re-
turned unable to determine the device as being destructive, a copy
was promptly sent to Attorney Grail for use on the appeal. This was
sent out in the evening mail at the jail and was received back the
next day. The failing to use this evidence which would conclusively
prove no crime and another showing of actual innocence, could not be
termed as some appeal strategy it was intentional negligence. This
would also hold true in the failing to put on the stand at trial
witnesses who could have refuted statements and possibly refute the
claimed probable cause, more likely gleaned by the search aircraft.

Based on the fact several showings of actual innocence exist
and have been presented, that the district court lacked jurisdiction
to rule on the §2255 per 28 USCS § 1292(d)(4)(B) prior to the resolu-
tion of the motion to transfer to the Federal Court of Claims, that
specific findings of law and fact with conclusions were not performed
by the district court as required by F.R.Civ.P. Rule 52(a) resulting
in the inability to appeal per Rule 54(b), that specific findings of
law and fact with conclusions is requested for all issues not add-
resses to include but not limited to the specific issues raised in

(35)

<u>Afroyim v. Rusk</u>, 18 L.Ed 2d 757 (1967) & <u>Vance v. Terrazas</u>, 62 L.Ed.2d
461 (1980) as it relates to the power of Congress to take citizenship
rights, the other in particular concerns the penal statute issue per
<u>Kennedy v. Mendoza-Martinez</u>, 9 L.Ed 2d 644 (1963), and any other issue
which the district court felt was frivolous, procedurally barred, or
of a creative nature, or just not addressed with required findings
of law with conclusions. The foregoing necessary to appeal and to stop
the procedural and substantive rights violations resulting from the
district court's biased opinion and order. Thank you.

Respectfully submitted,

Donald G. Jackman, Jr. # 06804-068

(36)

## CERTIFICATE OF SERVICE

This is to certify that the foregoing is true and correct to the best of my ability and knowledge under penalty of perjury, that same was sent postage prepaid to all parties of record listed below on this the 18th day of January, 2007, addressed as follows:

Respectfully submitted,

_Donald G. Jackman, Jr_ _____ Pro se

Donald G. Jackman, Jr. #06804-068
Federal Correctional Institution, Mckean
P.O. Box 8000
Bradford, Pa.   16701

cc: Office of the Clerk
United States District Court
for the Western District of Pennsylvania
U.S. Post Office & Courthouse
P.O. Box 1805
Pittsburgh, Pa.   15219

: Kelly Labby, AUSA
United States Attorney's Office
700 Grant Street, Suite 400
Pittsburgh, Pa.   15219

: Office of the Clerk
United States Court of Appeals
for the Third Circuit
21400 U.S. Courthouse
601 Market Street
Philadelphia, Pa.   19106-1790

: file